No. 13,855.

STATE OF LOUISIANA EX REL. JOSEPH A. McCABE VS. POLICE BOARD OF THE CITY OF NEW ORLEANS.

### SYLLABUS.

1. The court will refuse a *mandamus* where there has been an unreasonable delay in applying for it.
2. In the absence of special circumstances excusing the tardiness, twelve months, less a few days, will be held to be such unreasonable delay, in the case of a police captain who has been dismissed from the force after trial and conviction for one of the offenses specified by law as cause for dis-

missal, and who is applying to the courts for reinstatement, because of alleged nullities in the trial and conviction.

3. Especially will this rule be enforced in a case where the applicant for *mandamus* has neglected to avail himself of his ordinary legal remedy of application for a new trial; and where the granting of the writ would bring disturbance to the finances of one of the branches of the public service.

APPEAL from the Civil District Court, Parish of Orleans.— *Theard, J.*

*E. Howard McCaleb,* for Relator, Appellant.

*Samuel L. Gilmore,* City Attorney, and *Arthur McGuirk,* Assistant City Attorney, for Respondent, Appellee.

The opinion of the court was delivered by

PROVOSTY, J.   The relator was a captain on the police force of the City of New Orleans.   He was tried by the Board of Police Commissioners, the respondent herein, on the charge of "conduct unbecoming," and dismissed from the force.   This was on the 18th day of October, 1899.   On the 3rd of October, 1900, one year less fifteen days after his dismissal, he presented to the respondent Board an application for a new trial.   This application was refused, on the ground that it came too late under the rules of the Board.   On the 9th of October, 1900, one year less six days after his dismissal, he filed the instant proceeding, which is an application for writs of *certiorari* and *mandamus* to the respondent Board for his reinstatement.

The trial and the dismissal took place at one sitting of the Board. At the close of the hearing, as a continuous proceeding, one of the commissioners moved that the relator be dismissed from the force, and the motion carried unanimously.   Relator contends that this was not an adjudication of guilt, or conviction; and that the dismissal is not based, as required by law, on a conviction.

Relator could be dismissed legally only after conviction of one or more of certain specified offenses, one of which was "conduct unbecoming an officer."   He was tried for "conduct unbecoming."   He claims

that he was not tried for any one of the specified offenses for which he could be dismissed.

On his trial relator was not represented by counsel. He did not ask to be permitted to have counsel, nor did he object to going to trial without counsel; but the rules of the respondent Board provided, as follows: "The accused will be allowed to conduct his own case and examine and cross-examine witnesses." Relator claims that he was denied the right to be represented by counsel.

The superintendent of police and the chief of detectives were present at the trial, and without being called to the witness stand, and without being sworn, were interrogated. They were not regular witnesses, of whom ten were examined for the prosecution, and their statements could not have been very material, and nothing shows that the inter-rogatories were not as much in favor of relator as against him; although the inference is that they were against him. Relator claims that he was tried on unsworn testimony.

In the course of the trial relator was asked questions, and he answered them without objection. He claims that he was compelled to testify against himself, and that the trial was a criminal proceeding.

By way of return to the alternative writs, the respondent Board made a full and detailed statement of the entire proceeding against relator, annexing the record of the proceedings and all the documents in the case, and urging various defenses.

The first thing that attracts our attention in the case is the unwarrantable delay of the relator in filing these proceedings, or in applying to the respondent Board for a new trial. Without apparent reason, unless it was that he acquiesced in the dismissal, he permitted the delay for new trial to go by, and permitted one year to elapse without taking any steps to have himself reinstated, or to prevent the respondent Board from filling the vacancy, or supposed vacancy, caused by his dismissal, or even to warn the respondent Board against filling said vacancy. The neglect of relator to avail himself of his ordinary legal remedy of new trial, might itself be held to be fatal to the present application for *mandamus* (High, Ex. Legal Rem., 2 Ed., p. 22); but we prefer to rest our decision on the broader ground, that the relator, if he contemplated the present proceeding, should at least have warned the respondent Board against filling the vacancy, and should not have waited so long before instituting the present proceeding.

"The right to be reinstated may be lost by laches or unreasonable delay in making application for the writ." Am. and Eng. Ency. of Law, 2nd Ed., Vol. 19, p. 774.

In one of the cases cited in the note to the above, People vs. Justices, 78 Hun. (N. Y.), 334, a court officer removed without cause was denied the writ, because he had waited eight months before applying for it. Said the court: "If the relator claimed that he had been unjustly removed, it was his duty to proceed with diligence, in order that the respondents might have been advised of the claims advanced."

In the case of State *ex rel.* Evershed vs. Judges, 47 Ann. 180, this court said: "This court will not, by writ of *mandamus* or *certiorari,* review orders or decrees of the lower court made months before any application here."

The following statement of the law on this subject we find to be well supported by authority, viz:

"Laches or delay in making application for the writ, although not an absolute bar, may in the discretion of the court afford sufficient ground for its denial. In determining what will constitute such unreasonable delay or laches as will defeat the right to a *mandamus,* regard should be had to the circumstances justifying the delay, to the nature of the case, the relief demanded, and the question whether the right of the defendant or other persons have been prejudiced by the delay." Am. and Eng. Ency. of Law, 2nd Ed., Vol. 19, p. 775.

Tested by every one of the four considerations here laid down, the relator's application comes too late.

No *circumstances* of whatsoever kind, so far as the record shows, justify the delay. The relator delayed for some reason or purpose of his own, not disclosed.

The *nature of the case* was such as to call for prompt action. Relator knew, as everybody knows, that the police force of the city, even at its full complement, is greatly inadequate, and that the respondent Board could not afford to delay filling vacancies; and since he was required as part of his official duty to have informed himself of the laws of the State relating to the police force, and of the rules of the respondent Board, he knew that as soon as the delay for the new trial should have expired it would be the legal duty of the respondent Board to fill the vacancy. We will not assume that notwithstanding this urgency resulting from circumstances and notwithstanding this duty imposed

by law, for promptly filling this vacancy, the respondent Board did not fill it.

On the contrary, we will assume that respondent did fill it. And so assuming, we find that the case of the relator cannot stand the other test of *whether the rights of third persons have or not become involved*. The success of relator in this proceeding would carry with it the displacement of his successor; and thus the rights of this successor would have been passed on in his absence. This, however, would be no obstacle if the relator had not, by his silence and inaction, contributed to bringing about the situation, but we hold that by not applying for a new trial, or in any way warning the respondent Board of his intention to contest, he left to the respondent Board no choice or discretion but to fill the vacancy.

The *relief demanded,* in so far as it looks to the future, is well; if relator has been unjustly deprived of his position, it is but right that he should be reinstated; but, unfortunately for the case of relator, the *relief demanded* looks also inevitably to the past; the effect of the relator's success would be to consecrate the doctrine, that a displaced official may continue for a year, or indefinitely, for the matter of that, to get his salary without moving a finger towards earning it, by simply delaying to make his application to the courts for reinstatement. We can give our sanction to no such proposition.

Lastly, *the rights of defendant have been prejudiced* by the delay. Every criminal lawyer knows that postponement of the trial of his client is partial victory; witnesses die or disappear and evidence is otherwise lost; and this case, in the manner of its proof, partakes sufficiently of the nature of a criminal case to come within the rule; and we can add that under the particular circumstances of this case there is reason to fear that the respondent Board might, on a trial had at this late day, experience considerable difficulty in producing the testimony adduced on the first trial. And the delay has *prejudiced* respondent in another respect. It has kept respondent during an entire year in the dilema of having either to run the already greatly inadequate police force of the city short of one captain, thereby to that extent crippling the force; or to fill the apparent vacancy, at the risk of employing one more captain than is permitted by law, that is to say, at the risk of committing an illegal act; and this with the disagreeable and serious concommitant of no legal provision for the payment of the extra employee. The respondent is provided with no

funds except such as the City Council sets aside yearly in the city budget on an estimate made out by respondent every December for the expenditures of the following twelve months. If the relator were reinstated, where under the law the back salary accrued during this twelve months of delay would come from, it is hard to say. The reinstatement of relator would bring disturbance to the finances of the respondent, and the respondent is one of the branches of the public service. And this brings into play another principle of the law of *mandamus* or of *certiorari*.

"Where the reversal of the proceedings sought to be reversed would result in detriment or inconvenience of the public, or is calculated to derange the interests of society, a party is required to act speedily in making his application, and any unreasonable delay in so doing will warrant the dismissal of the writ." Ency. Plead and Prac., Vol. 4, p. 133.

Counsel for relator contends that this matter of unreasonable delay is not specially pleaded by the respondent as a ground of defense; and that, in consequence, it cannot be made the basis of the judgment of the court. The contention is made in view of the fact that the very learned judge *a quo* had like us made this delay the basis of his judgment. We do not think that the matter of this delay needed to be specially pleaded. It is patent on the face of the record. All that the respondent needed to do was to make a full return of all the facts and circumstances of the matter, and it did so. No reproach, surely, could be made to the return on the score of not being sufficiently full and specific. It is for the court to say whether, on all these facts, the relator is entitled or not to the remedy of *mandamus*—an extraordinary remedy the granting or refusing of which addresses itself more or less to the discretion of the court. The court will grant or refuse the *mandamus* on the facts of the case as pleaded and proved, whether the legal deductions from these facts are specially pleaded or not.

"It is to be observed that the courts will themselves take notice of such propositions of law as necessarily grow out of the facts alleged in the return, and since matter of law is not traversible in pleadings it need not be alleged in the return. The principle, as here stated, is well illustrated in cases of *mandamus* to municipal corporations to restore officers who have been removed." High, Ex. Legal Rem., 2nd Ed., p. 370, Sec. 469.

In the case of State *ex rel.* Hathaway vs. The State Board of Health, where the sufficiency of the return to a *mandamus* was questioned, the Supreme Court of Missouri said:

"While the return contains no specific denial in terms of the matters stated in the petition and writ, still the matters thus stated in the affirmative form on the return do deny all the matters of substance alleged by the relator and this form of a denial must be held to be sufficient." 103 Mo. 27.

We have the less hesitation in denying the relator's application from the fact that the irregularities complained of by relator do not impress us as being very grave. It is probably usual in the proceedings before the respondent Board to dispense with counsel, and to put questions to the party on trial. *Non constat* that if relator had asked for counsel, or had refused to answer the questions, both the request in the one case and the refusal in the other would not have been acceded to. The superintendent of police and the chief of detectives were questioned merely incidentally, not as regular witnesses; and probably this too was in the usual course; and here again it has to be noted that relator made no objection. So far as the other two grounds are concerned they could have any gravity only if the proceedings left the mind in doubt as to what offense the relator was tried for, and as to whether he was convicted; but the proceedings are amply sufficient to place securely within the domain of legal certainty the two essentials, first, that the relator was tried for the offense of "conduct unbecoming an officer;" and, second, that he was convicted. Unlike an ordinary court of justice, the respondent Board is not tied down to any set forms; it keeps safely within the law so long as it conducts its proceedings fairly, without denial of any legal rights, and with sufficient formality to make it appear to a legal certainty that there has been a trial and a conviction for one of the offenses specified by the law as good cause for dismissal. An employee tried before such a Board cannot lie low for slips in the procedure, with a view to taking advantage of them later before other tribunals on application for *mandamus* or *certiorari.* Even in prosecutions for grave crime a defendant is not permitted to take advantage of mere irregularities to which he did not object at the time.

Since everything which we have said in this opinion, with reference to *mandamus,* applies equally to *certiorari* (Ency. of Plead. and Prac.,

Vol. 4, 133), it is entirely unnecessary for us to discuss the question whether *certiorari* would lie in a case like the present one.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be affirmed at the cost of the relator.