————o————

No. 4604.

Court of Appeal, Parish of Orleans.

STATE OF LOUISIANA, EX REL. LOUIS SARAPARA VS. BOARD OF DIRECTORS, SOLDIERS' HOME.

1. The right of the "Louisiana Soldiers" to become an inmate of the Soldeirs' Home of Louisiana, known as Camp Nicholls, is not absolute, but relative only. It is conditioned upon the applicant qualifying under such rules and regulations, not inconsistent with the law creating the institution, as may be adopted by the Board of Directors.

2. Under its legislative grant of authority to "make all necessary rules and regulations to govern said institution," the Board of Directors of the Soldiers' Home may adopt any reasonable regulation necessary for the good order, discipline, morals or health of the institution, and may enforce same by trial and expulsion of the inmate who refuses obedience to and compliance with such regulations.

3. An inmate of the Soldiers' Home who has been tried and expelled by the Board of Directors may not have the regularity of his trial reviewed by the writ of mandamus, when it does not appear that he has exhausted his legal remedy before the Board of Directors by applying for a new trial.

Appeal from Civil District Court, Division "B."

S. F. Gautier, for Plaintiff and Appellant.

W. Guion, R. G. Pleasants, for Defendant and Appellee.

MOORE, J. This was an application addressed to the Civil District Court for the Parish of Orleans, for a writ of mandamus by which the relator, who was a former inmate of the Soldiers' Home of the State of Louisiana and who had been expelled therefrom after trial by the Board of Directors, sought reinstatement.

From a judgment sustaining a plea of no cause of action, the relator appeals.

—117—.

Appellant's contention, as set forth in his original petition, is substantially, that for as much as he was on the — day of February, 1905, and after full investigation, regularly admitted into said Home as a Confederate soldier, he could not thereafter be tried for any cause, and as a result of said trial, if found guilty, be expelled from the Home under any by-law, rule or regulation which the Board of Directors may have adopted; that his right to enter the said Home as an inmate and thereafter to remain as an inmate at his pleasure, and as a Confederate Soldier is guaranteed to him under the Constitution and by the laws of this State, and that the Board of Directors could not therefore have denied him the right to enter nor can it deprive him of the right to remain; that any by-law, rule or regulation adopted by the Board of Directors authorizing the said Board or any other body or person to try an inmate, and as a result of conviction, to punish by expulsion is *ultra vires*, unconstitutional, illegal and of no force and effect whatever.

In his supplemental petition the relator avers that if the said Board has the right to adopt such by-laws, rules and regulations and to try offenders and punish them by expulsion, then he has not been fairly tried. He avers, in this particular, that he was served with a copy of the charges against him on the 19th of June, 1908, and that he was cited to appear for trial on the 22d day of June, 1908. He avers that the copy of the charges served upon him are annexed to his petition; but no such document is in fact annexed, nor is it to be found in the record, and, consequently, neither the court below nor this Court is advised as to the nature of said charges: Continuing the averments are, that on the said 22d of June, 1908, "said Board failed to put him on trial, but instead, J. W. Noyse (one of the members of the Board of Directors), without requiring relator to plead to said charges or giving him the opportunity to have witnesses present in his behalf, and without evidence, trial or proceedings of any kind or sort, made the motion that the said Board forthwith expel the relator, that he was seconded by M. S. Costley, and Alex N. Power, demanded that relator be first required to enter a plea of guilty, but on the refusal of relator to enter such plea and without semblance of a trial or proceeding other than the motion as stated herein, relator was ordered to retire, and thereafter was informed he had been expelled."

—118—

The "Soldiers' Home" was established by Act No. 62 of 1882. The first section of this act as amended by Act 102 of 1896, provides:

"That until suitable grounds be purchased and proper buildings erected for the full development of the purposes of the present act, some tenement within the City of New Orleans, or its environs, shall be rented with a view of establishing temporarily a 'Soldiers' Home' for the care and reception of all Louisiana soldiers, or all soldiers who have resided in the State of Louisiana five years prior to the date of their application for admission to said home, and who are not already pensioned or provided for by the State."

There is no other statute declaratory of the purposes for which the "Home" is to be established; and whilst the Constitution of the State declares that

"The Soldiers' Home of the State of Louisiana, known as Camp Nicholls, shall be maintained by the State * * *" Art. 302 Con. 1898, and enjoins upon the General Assembly the duty of making annual appropriations for its maintenance, for the clothing of the inmates and for an allowance for each of said inmates for his personal use, that instrument nowhere undertakes to define, or declare, the specific purposes of the institution.

There is, therefore, no constitutional right guaranteed to any Louisiana soldier, however conditioned he may be, to demand admission as an inmate to Camp Nicholls (which camp, under the provisions of the Act supra, has since been established as the "Soldiers' Home"), or when admitted therein to be thus protected from dismissal or expulsion therefrom.

Nor is there any right in this regard accorded by statute.

It will be readily perceived that Sec. 1 of the act *supra*, as amended, does not confer such right on any one who may present himself for admission as an inmate on the simple and sole proof that he was a "Louisiana Soldier," or a "Soldier who had resided in the State of Louisiana for five years prior to the date of his application for admission to said Home," etc.

It is true that by Sec. 4 of the Act of 1882 supra, as amended by Act No. 102 of 1896: "All applicants for admission into the Home must establish to the satisfaction of the Board of Directors that they were soldiers or sailors in the

—119—

military or naval service of the Confederate States and enlisted from the State of Louisiana, or some other State composing the Confederacy," etc., but it does not follow that the Board of Directors of the Home who are charged by the statute with the "proper direction of the affairs of said institution" and are authorized "to make all necessary by-laws and regulations to govern said institution," may not, in the exercise of their discretion, provide other qualifications not inconsistent with the purposes of the legislative charter, for applicants for admission as inmates.

These additional qualifications may be such as require the absence in the applicant of a notoriously evil and corrupt character and reputation, or his freedom from a contagious disease, so as thus to guard against the breach of discipline in the camp or the corruption of the morals or the impairment of the health of the other inmates, or which otherwise might impede or seriously interfere with the successful execution of the beneficent and patriotic work of the institution.

As an illustration, and in order to emphasize the fallacy of the argument, that notwithstanding the grant of authority to the Board of Directors "to make all necessary by-laws and regulations to govern said institution * * *" it may not add such additional qualification for admission as inmates, as may not be inconsistent with the provision of the law of its creation or repugnant to "the full development of the purposes of the present act," Sec. 1, Act 62 of 1882, as amended by Act 102 of 1896, we cite the fact that Sec. 4 of the Act of 1882, No. 62, *prior to* its amendment by the Act of 1896, No. 102, provided that applicants for admission to the Home must establish to the satisfaction of the Board that they were "soldiers in the military service of Louisiana," and must "show by proper vouchers that they were maimed or disabled in said service or that they have become infirm by reason of age or sickness."

If the Board of Directors were then without authority to add additional qualifications it would result, *as was never contemplated by the act*, that an applicant who had been in the "military service of Louisiana" during the period of usurpation —say from 1862, up to the Restoration in 1877, and whilst engaged in the service of the usurpers was "maimed or disabled," would be eligible for admission.

It was the by-laws and regulations adopted by the Board

—120—

of Directors that excluded such "Louisiana Soldiers" from the benefits of the Home, and the power the Board of Directors then had to make and adopt said additional qualifications it still possesses.

Every person admitted into the Home as an inmate is admitted, necessarily, subject to and conditional, upon his yielding obedience to all the rules and regulations concerning the internal government, management and discipline of the institution, and these rules may provide for his trial and expulsion in the event of his violating all or any of them or, when, by his conduct, he may become unfit for companionship, or his presence hurtful to the well-being of the institution; or he becomes a disturber of order, or a disrupter of discipline, or where for any good and sufficient cause, his expulsion may be deemed necessary, just as members of any corporation, club, benevolent society, stock and commercial exchanges or other similar bodies, are admitted into their respective bodies and similarly dealt with.

If, as it is now a well settled rule of law, the power to remove a corporate officer from his office and to disfranchise a member for reasonable and good cause, is one of the common-law incidents of all corporations; and if. as said by Lord Mansfield in the well known case of Rex vs. Richard: "It is necessary to the good order and government of corporate bodies that there should be such power as much as the power of making by-laws," then, with greater reason is it that an institution of the character under discussion and as concerning the nature of the affiliation of an "inmate" with the institution should have the inherent power of expulsion of the inmate for reasonable and just cause and after due trial, according to the manner and form presented by the by-laws.

This disposes of the appellant's contention, as set forth in his original petition, that the Constitution and laws of this State rendered him, so to speak, immune from trial under any rule or regulation of the Board of Directors and by the said Board and from punishment by expulsion.

## II.

The supplemental petition deals with the character of the trial.

As we have stated, neither the original nor the supplemental petition advise us as to the nature and character of the charge or charges against relator, but this is of no moment; what is of consequence, however, is that the petition lacks the essential averment that relator moved the Board of Directors for a new trial. The absence of this allegation is fatal to relator's application for mandamus.

It is well settled that this writ which issues not of right, but only in the discretion of the Court, will never be sent out in a case of this character when it does not appear that the relator has exhausted his legal remedy of new trial.

In State ex rel. Aucoin vs. Board of Police Commissioners, 113 La. 423, the Court said:

"But there is a paramount reason why this application cannot be entertained. Relator did not exhaust his legal remedy before the Board. He should have applied for a new trial, and urged the grounds which he is now urging, viz: refusal to hear his counsel, illegal constitution of the Board, because of two members not having heard the evidence; necessity of trying the case *de nova*. *Non constat* that a new trial would have been granted him had he urged these grounds. The grounds had to be submitted to the judgment of the police board on motion for a new trial before they could be submitted to any other tribunal as grounds for mandamus."

In support of this rule the Court then cites a number of authorities.

In State ex rel. vs. Whitaker, 116 La. 947, the Court said:

"It appears that he (the relator) did not move for a new trial.

"In several decisions it has been held as a safe rule to follow that the complaining party should pursue his defense to the utmost limit of a new trial.

"We believe that under the decisions in question the objections urged are fatal to defendant's application for a mandamus."

In State ex rel. vs. Board, etc., 119 La. 515, the Court (referring to the fact that:

"The petition does not allege that the relator moved for a new trial, or was prevented from so doing," added:

"In Klotter vs. Board, 51 A. 747, this Court held that the Board had the power to grant new trials, although no such special authority was conferred on it by Act 63 of 1888, the statute of its creation. In State ex rel. McCabe vs. Board, 107 La. 162, the Court said: 'The neglect of the relator to avail himself of his legal remedy of new trial might itself be held fatal to the present application for mandamus. High Ex. Legal Rem. (2d Ed.), p. 22.''

There is no error in the judgment appealed from, and it is affirmed.

Rehearing refused February 8, 1909.