## STATE ex rel. WILTZ v. SEWERAGE & WATER BOARD OF NEW ORLEANS. *

### No. 14265.

Court of Appeal of Louisiana. Orleans.

Dec. 19, 1932.

Saint, Kelleher & Hughes and H. B. Kelleher, all of New Orleans, for appellant.

Michel Provosty and Gus Llambias, both of New Orleans, for appellee.

JANVIER, J.

Relator, Frank Wiltz, formerly in the employ of respondent Sewerage and Water Board of New Orleans, was, on March 15, 1931, discharged from his position by letter (dated March 3, 1931) from the secretary of the said board. Alleging that in securing his said employment he had been selected after successfully complying with the requirements of the civil service laws applicable to the position, particularly Act No. 89 of 1900 of Louisiana, and that his said discharge was without lawful cause and was in violation of the provisions of the said statute, Wiltz seeks by mandamus to secure reinstatement in his former position, and he prays for judgment for such salary as he would have earned since his alleged unlawful discharge.

Respondent board, by plea of estoppel, contends that Wiltz, by his laches in delaying the bringing of this proceeding, has barred any right to the relief sought, if any such right ever existed. The said plea was sustained below, and Wiltz has appealed.

The case was tried below only on the plea of estoppel, and the only evidence tendered was the testimony of Wiltz himself and of another witness, who testified in his behalf. These witnesses sought to show that Wiltz, during the time which elapsed between his discharge and the day on which this suit was filed, some eleven months and eighteen days later, had reasonable cause to believe that the board would reconsider the matter and that for this reason the delay was not unreasonable.

The evidence shows that immediately after his discharge Wiltz called on the mayor of New Orleans, who, by virtue of his position as mayor, is president of the respondent board, and that "he led me to believe I would be reinstated after the general lay-off was over." It also appears that Wiltz, during the four months next following his dismissal, "made repeated visits from day to day to Mr. Skelly," also a member of respondent board, and that Skelly said "not to bring a suit, that he would handle the case for me."

However unjust and unwarranted a discharge of a civil service employee may be, and however great may be his right to his position, it is obvious that continued failure to assert his right may and should be considered as a waiver of such claim to the position as he may originally have had. In Arant v. Lane, 249 U. S. 367, 39 S. Ct. 293, 294, 63 L. Ed. 650, the Supreme Court of the United States considered a matter involving delay in attempting to obtain reinstatement and said:

---

*Rehearing denied January 16, 1933. Certiorari denied by Supreme Court January 30, 1933.

"When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if·his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service."

The Supreme Court of Louisiana has similarly said, in State ex rel. Skelly v. Board of Commissioners, 159 La. 465, 105 So. 510, 511:

"We believe that plaintiff was harshly and unjustly dealt with, but we realize that in the absence of prompt action on his part to correct the evil, the taxpaying public have an interest that is paramount to that of plaintiff, and such a vital interest as the courts of the land cannot ignore."

The necessity for prompt action has been recognized generally by other courts and examples of the application of the rule are numerous. Notable among them are: Stone v. Board of Prison Commissioners, 164 Ky. 640, 176 S. W. 39; Connolly v. Board of Education, 114 App. Div. 1, 99 N. Y. S. 737, and cases· cited; Clark v. City of Chicago, 233 Ill. 113, 84 N. E. 170. See, also, McCabe v. Police Board, 107 La. 162, 31 So. 662.

■ We believe that the established jurisprudence requires that where there has elapsed between the discharge of the civil service employee and the initiation by him of litigation looking to his reinstatement more time than would ordinarily be necessary for him to make reasonably certain, in the ordinary course of affairs, that his reinstatement is not to be amicably granted, and such additional time as may be reasonably necessary to employ and consult counsel, that, as we have said, where there has elapsed more time than is reasonably necessary for the purposes above set forth, then the burden of explaining such additional delay rests on ·the employee, and, at the risk of the dismissal of his suit because of laches, he must show that the delay was reasonable and justifiable under all the circumstances.

■ Where there exists probable cause for believing that there is a reasonable possibility of amicable reinstatement, the employee may wait, because, while there is a public policy, as announced in Arant v. Lane, supra, which requires promptness, there is another well-settled public policy which abhors unnecessary litigation and which prevents the penalizing, because of delay, of any one who exerts all proper efforts at effecting an amicable adjustment.

■■ If the discharged employee receives assurances from some one in authority that efforts will be made to arrange reinstatement, he need not resort to the courts until so much time has elapsed as to make it appear certain that the efforts have been unsuccessful and that it would be vain to wait longer. Had Wiltz brought this proceeding within a short time after the expiration of the four months' period to which he refers in his testimony and during which four months he "made repeated visits from day to day to Mr. Skelly," there would be no doubt of his right to proceed with the trial of this litigation, but, after that first four months' period, an additional period of nearly eight months elapsed, and the testimony of Mr. Wiltz with reference to his activities in attempting to secure reinstatement during that period is very indefinite and, in fact, we gather from it that very little was done by him and nothing by any one else. In Exnicios v. Board of Commissioners, 153 La. 706, 96 So. 539, on which great reliance is placed by counsel for Wiltz, Exnicios, who had been discharged from a civil service position, waited more than two years, but during that time there was pending in court a mandamus proceeding involving another employee, one Sonnenberg, and it was conceded by the president of the board which employed Exnicios that the Sonnenberg Case [149 La. 1095, 90 So. 417] would be decisive of the right of Exnicios to reinstatement. Here there was no other case pending and Wiltz remained idle, relying solely on the rather indefinite promises made by the mayor of the city and by the other member of the board, which promises, however, would have been sufficient, since they were· made by persons apparently in authority, had Wiltz not waited for so long a time after it became evident that nothing was going to result from them..

In State ex rel. Skelly v. Board of Commissioners, supra, the Supreme Court refused to order the reinstatement of Skelly "more than 2½ years after his dismissal." With reference to Skelly's contention that he had waited because of another similar case pending and because of the hope that, as a result of the other case, his own reinstatement would be made, the court said:

"The proof in the record does not show that any one in authority made' him any promise, or held out such a hope to him."

It is true that from this language it might appear that, had any one in authority made Skelly the promise of reinstatement, even two and one-half years would not have been too much time; but we do not believe that the court intended to convey such meaning. All that the court meant was that in Skelly's Case the promise had not been made by any one in authority and that it should not have been relied on.

Inasmuch as no evidence was introduced except that of the relator and his one witness and there was practically no cross-examination, we feel that in testifying he gave all of the facts which were in his possession and that, had he been able to testify that during

the second period of nearly eight months Skelly had continued to make promises of reinstatement, he would have done so. In view of the fact, then, that his testimony is so indefinite on this point, we believe that he was not justified in waiting and that the judgment of our brother below dismissing the suit for laches was correct.

The judgment appealed from is affirmed.

Affirmed.