McBride, judge.
This is a mandamus suit brought by relator, Joseph G. Schwehm, a member of the Police Department of New Orleans. He became affiliated with the police force on June 24, 1925, was elevated to the rank of Captain of Detectives on December 31, 1942, was blanketed in with that rank under the Civil Service Statute, Act 171 of 1940, as amended by Act 177 of 1942, LSA-R.S. 33:2391 et seq., and was demoted to the rank of Lieutenant of Police on October 10, 1946, by the then Superintendent of Police, for the reason that there were “too many Police Captains and Detective Captains.” Relator has impleaded as defendants the Mayor of the City of New Orleans and the then Chairman and Members of the Department of Civil Service of New Orleans.
The petition alleges that notwithstanding that he has “never lost his status of Captain of Detectives” and was preferentially eligible for reappointment, relator was entirely disregarded and other persons were elevated to the grade of Captain of Detectives in the Police Department on February 15, 1947, and again on January 1, 1948; that he registered timely complaints when such appointments were made and that he insisted that he himself should have been appointed, but all to no avail. Relator prays for the issuance of a writ of mandamus compelling the defendants to recognize him as Captain of Detectives in the Police Department of New Orleans and to place his name on the roster of the Department of Civil Service as being eligible for appointment to any existing vacancy or to any vacancy which might occur in the future in the grade of Captain.
Several defenses are made by the respondents, one of which is “that relator has waited more than three and one-half years to bring this action and * * * he has been guilty of laches of such a nature as to bar his right for a peremptory writ of mandamus.”
Upon the trial of the rule to show cause, the testimony of certain witnesses was heard and certain documentary evidence was received; the trial judge rendered judgment recalling the alternative writ of mandamus and rejected relator’s demands. Relator then appealed from the judgment to the Supreme Court of Louisiana, but that Court, upon reaching the conclusion that it had no jurisdiction of the appeal, transferred the matter to us. See 224 La. 811, 70 So.2d 881.
In the written reasons for judgment handed down, the trial judge stated:
“I would feel no hesitancy in issuing the writ applied for herein except that I am of the opinion that Relator’s case comes within the doctrine of State ex rel. Martin v. Alford [203 La. 232], 13 So.2d 845, in that his rights have been lost by his laches.”
We are in full agreement with the holding that relator may not at this late date judicially enforce any of the rights he may have had, and this for the reason he has forfeited them by virtue of his unreasonable and negligent delay, which amounts to laches on his part, in seeking redress in the courts. He is now no longer privileged to have a judicial review of the action of the Superintendent of Police in demoting him or the subsequent failure of the Department of Civil Service of New Orleans to restore him to the rank of Captain in the Police Department. That, therefore, makes it unnecessary to determine whether relator *194 was unfairly dealt with or not and whether he retains a Captain’s rank or is still eligible to re-employment as such.
It is settled jurisprudence that an aggrieved public employee situated as is relator may not wait for any, unreasonable length of time before seeking the aid of the courts. The theory of the doctrine of laches so far as applicable to the situation with which we are concerned was excellently summed up by the Court of Appeal for the First Circuit in Williams v. Livingston Parish School Board, 191 So. 143, 144, wherein it was said:
“ * * * The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharged employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take. The prevention of duplication of positions and the payment of double salaries requires such discharged employee, not only to press his demands, but also to submit his claim to the courts for adjudication without unnecessary delay.”
In State ex rel Martin v. Alford, 203 La. 232, 13 So.2d 845, 848, in which numerous authorities are cited, our Supreme Court said:
“Relator waited eight months and eight days before filing the present suit. * * *
“In these circumstances, relator is guilty of such laches as must defeat his right to the relief sought, if any such right existed, which we do not think is the case.
“It is well settled that the right of a public official or employee to be reinstated may be lost by laches or unreasonable delay in making application for that purpose.”
Relator’s counsel contends that State ex rel Martin v. Alford is to be distinguished from the instant case and is not applicable for the reason that the relator in the cited case sought reinstatement to a position from which he had severed all connections by voluntary resignation. But counsel fails to recognize the fact that the courts have generally and uniformly held that irrespective of the cause for a public employee’s separation from service, public policy dictates that he must proceed expeditiously to assert his legal rights in order that the public fisc, the public convenience, and the ordinary functions of government might not suffer or be disturbed through his procrastination.
Thus, it was said by the United States Supreme Court in United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 294, 63 L.Ed. 650:
“When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.”
Similarly, our own Supreme Court in State ex rel. Skelly v. Board of Commissioners, 159 La. 465, 105 So. 510, 511, said:
“* * * We believe that plaintiff was harshly and unjustly dealt with, but we realize that in the absence of prompt action on his part to correct *195 the evil, the taxpaying public have an interest that is paramount to that of plaintiff, and such a vital interest as the courts of the land cannot ignore.”
Counsel for relator seeks to excuse relator’s delay before the bringing of the suit and states that relator consistently and continuously made complaint to the Department of Civil Service and although he was given excuses which were without merit, he has continued to “fight for his rights” before the Department until November 1949 at which time relief was finally denied to him.
Where the aggrieved public employee has probable cause for believing that there is a reasonable possibility of being amicably reinstated in the service, the employee may wait before bringing the suit, and if the wait is so justified, of course, it should not be said that the employee’s delay was negligent and should militate against his right to be restored to his former status. Also, if a discharged employee should receive assurances from some person in authority that efforts are being made to arrange his reinstatement, we do not think it should be said that the employee need make an immediate resort to the courts. See State ex rel. Wiltz v. Sewerage & Water Board, La.App., 145 So. 34. But neither of those situations is to be found in the instant case. Nor is counsel’s statement that relator was always vigilant entirely in keeping with what is shown by the record which we have most carefully scrutinized. We find these to be the facts:
When relator was informed of his demotion he made complaint to one of the Police Commissioners who informed him “not to worry any more about it” as he would be reappointed Captain. Subsequently, when other members of the Police Department were elevated to the rank of Captain, it is true that relator did make complaints. Upon one of his visits to the office of the Department of Civil Service relator was told by a young woman employee that he could not be considered for appointment as a Captain because his name was not contained on a re-employment list due to his failure to submit a written request, which is required by the rules of the Civil Service Commission, that his name be placed there. For some reason or other relator did not make the required written request for the placement of his name on the employment list until June 16, 1947, or some eight months after his reduction in rank from Captain to Lieutenant had taken place. Relator’s request reads:
“I hereby request that my name be placed on the employment list beginning 6/16/47 for the position of Captain of Detectives.
“I understand that my name will remain on this list for only one year from the above date.”
Rule 4.1 adopted by the Civil Service Commission provides:
“Names shall be removed from reemployment lists after they have been thereon for a continous period of one year. Once a name has been placed on a reemployment list, it shall not be removed until the period of one year is completed, except that names of persons placed on such lists after having been on special military leave under the provisions of Section 10 of Rule VIII may remain thereon for five years.”
Lieutenant Schwehm’s name was allowed to have a place on the employment list for consideration for appointment as Captain of Detectives for the prescribed period of one year or until June 17, 1948, on which date it was removed from the list in accordance with the provisions of the quoted rule and relator was notified of that fact and to that effect. We are constrained to say here that we would be most unwilling to say that up to this point that relator could be charged with having been guilty of laches which would destroy his right to seek judicial redress in the matter of reinstatement, but relator’s subsequent actions, or rather his inaction, manifest that he was guilty of negligent delay which unfortunately must work to his disadvantage in this mandamus proceeding. Therefore, it is well to ex *196 amine into his subsequent conduct and reaction to the notification that his name no longer occupied a place on the re-employment list.
The documentary evidence discloses that on June 21, 1948, which was but a few days after his name had been taken off the list, relator addressed a communication to the Department of Civil Service in which he acknowledged receiving the notification and criticized the Department 'severely for the step which it had taken. The final, paragraph of relator’s said letter especially attracts our attention, and the language of that final paragraph indicates to us that at the time of the writing of the letter relator had assumed an air of resignation insofar as the action of the Department was concerned and that he undoubtedly considered the action of the Department in the matter of the removal of his name from the list to be conclusive and final. We quote from the letter:
“I do not know what recourse is open to me, and I fear that my exposure of this situation may bring reprisals. I will cheerfully bear the latter if it serves to strengthen the position of others who complacently labor under the impression that there is security where I have found none.”
On the very next day the Director of Personnel, Department of Civil Service, made a reply to relator’s communication, the concluding part of which reads:
“We regret that you are disappointed in regard to the appointments made for the vacancies in the class of Detective Captain. Nevertheless, these appointments were clearly in compliance with the provisions of the City Civil Service Law.”
It has not been shown what relator did or whether he did anything to protect his interests after receiving the communication from the Director of Personnel and matters seem to have remained in a dormant state until October 2, 1949, when Mr. Richard A. Dowling, a local attorney, on behalf of relator, addressed a letter to the Department of Civil Service, the contents of this letter not appearing from the record. At any rate, on October 4, 1949, the Department of Civil Service advised Mr. Dowling that his letter had been received and that the matter was being referred for attention to the Civil Service Commission.
Then on November 4, 1949, the Department notified relator’s attorney that:
“ * * * The City Civil Service Commission unanimously acted to deny the request made in the letter because no arguments presented in the letter indicate any violation of law or administration on the part of the Commission or its staff.”
Relator filed this suit on January 25, 1950.
It is clear from the above recital that for a period of about sixteen months, that is, from June 22, 1948, the date on which the Director of Personnel addressed the letter to relator, to October 2, 1949, when he retained the services of Mr. Dowling, relat- or did absolutely nothing to vindicate or assert his rights, and we believe that the delay for such a period before bringing suit was inexcusable, unreasonable, and negligent and constitutes laches on the part of relator.
Laches in legal significance is not regarded as mere delay but such a delay that works a disadvantage to another. There is no fixed rule for determining just what constitutes prompt action on the part of an aggrieved public employee to effectually assert his rights, and each case must depend upon its own peculiar facts, and the question is one that calls for the exercise of the court’s sound discretion. State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830; State ex rel. Pepper v. Sewerage & Water Board, 177 La. 740, 149 So. 441. Our research of the jurisprudence established by cases similar to the one now before us shows that it has been held that periods of delay of eight months or longer before bringing suit constitute laches on the part of the employee seeking restoration in the public employ.
*197 The requirement for prompt action in such cases has received unanimous recognition by the courts and many examples of the application of the rule may readily be located. Besides those already cited, some of the Louisiana cases are: State ex rel. Eberle v. Orleans Parish School Board, 221 La. 243, 59 So.2d 177; State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834; State ex rel. Lutz v. Sewerage & Water Board, 179 La. 742, 155 So. 10; State ex rel. Koehl v. Sewerage & Water Board, 179 La. 117, 153 So. 533; Crais v. City of New Orleans, 172 La. 931, 136 So. 7; State ex rel. McCabe v. Police Board of New Orleans, 107 La. 162, 31 So. 662; State ex rel. Wiltz v. Sewerage & Water Board, La.App., 145 So. 34.
The jurisprudence of other jurisdictions is to the same effect. See Stone v. Board of Prison Commissioners, 164 Ky. 640, 176 S.W. 39; People ex rel. Connolly v. Board of Education, 114 App.Div. 1, 99 N.Y.S. 737, and cases cited; Clark v. City of Chicago, 233 Ill. 113, 84 N.E. 170; People ex rel. Reith v. Polk, 138 App.Div. 497, 122 N.Y.S. 1048; People ex rel. Miller v. Justices of the Court of General Sessions, 78 Hun 334, 29 N.Y.S. 157.
Counsel for relator makes the argument that the instant case is unlike any of those cited in that Lieutenant Schwehm does not claim that there is due him back salary and that such a claim was asserted in each of the cited cases and the principle underlying all the decisions is based on the consideration that the public fisc would be affected as two salaries might have to be paid for but one service. The damage which might be sustained by the public fisc, and ultimately by the taxpayers, was not the only consideration for the holdings in the cases. The courts viewed the matter from the standpoint of public policy taking into account the likelihood that the public service, public convenience and the ordinary processes of government would be seriously disturbed, affected, or jeopardized were an aggrieved public employee allowed to take his own time in seeking the aid of the law in the matter of his reinstatement to the employment.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.