*491
 
 HIGGINS, Justice.
 

 The relatrix appealed from a judgment dismissing her suit on the ground of laches, wherein she sought a writ of mandamus to ■compel the Orleans Parish School Board to reinstate her as a teacher, and also a judgment for back salary at the rate of $165 per month, commencing September, 1936.
 

 Relatrix alleges that she was appointed as a teacher in the public schools by the Orleans Parish School Board in 1926 and
 
 served
 
 until June, 1936, at which time her salary was $165 per month; that under the provisions of Acts No. 164 of 1934 and No. 79 of 1936, she became a permanent member of the Public School System and acquired the right under these Tenure Acts to permanent employment; that on June 8, 1936, she was married, and under the rules of the School Board her marriage automatically constituted her'resignation; that she sent in her formal written resignation on August 15, 1936, in obedience to the rules of the School Board; that on August 22, 1936, she received a letter from the superintendent of the Orleans Parish School Board notifying her of the board’s acceptance of her resignation; that, thereafter, on August, 1936, she communicated with the superintendent and asked him to disregard her resignation, and requested that she be reinstated in accordance with the provisions of the Teacher’s Tenure Law; that she was advised by the superintendent to write the School Board direct in order to ascertain its position with reference to the law, and she did so on September 18, 1936; that at the opening of the 1936-37 school term she reported to the school where she had been previously employed and was informed that another teacher had been assigned to her class; that she immediately again wrote the superintendent and asked that she be reinstated, and on September 21, 1936, she received a reply, stating that her application for reinstatement would be presented to the School Board; that on September 25, 1936, she attempted to see the secretary and the superintendent of the School Board, but was unable to interview them, and was informed by the superintendent’s secretary that her case was a hopeless one, as the board had decided not to reinstate married female teachers; and that she was entitled, under the law, to be reinstated and to receive her back salary of $165 per month, commencing September, 1936.
 

 This suit was filed on September 21, 1937.
 

 The defendant pleaded that the relatrix had voluntarily formally resigned and, her resignation having been duly accepted, she was without any legal right to withdraw it; that the School Board on September 18, 1936, had refunded to relatrix, as a resigned teacher, under the provisions of the Teacher’s Retirement Law, Act No. 116 of 1910, as amended, the sum of $350.60, which was received, accepted, and retained by her; and that she had lost whatever rights she might have had to be reinstated by her failure to take the necessary legal steps for that purpose from the date of her resignation in August, 1936, to the date of filing the instant suit, September, 1937.
 

 In support of the allegations of her petition, relator testified that she resigned because she knew her position was automatically forfeited under the School Board’s
 
 *493
 
 rule because of her marriage; that she sent her formal written resignation as an act of courtesy to the board; and that, had it not been for the rule of the board barring married female teachers, she would have continued her employment. Her resignation reads as follows:
 

 “811 St. Ferdinand Street
 

 “New Orleans, Louisiana
 

 “August 15, 1936.
 

 “Orleans Parish School Board
 

 “703 Carondelet Street
 

 “New Orleans, Louisiana.
 

 “My dear Sirs:—
 

 “Due to the fact that I have been married this summer, I hereby tender my resignation as a public school teacher.
 

 “Mingled with my new-found happiness is a feeling of regret at having to sever my association with the New Orleans Schools. My work as a teacher was pleasant, and if worthwhile, it was due to the kindly help and guidance rendered by Mr. Bauer, Miss Eagan, and my principal, Miss Leclere.
 

 “May our public schools, under your intelligent management continue to make progress in the noble task of educating the youth of New Orleans.
 

 “Very truly yours,
 

 “[Signed] Anna Barattine
 

 “(Mrs. Henry Calamari.)”
 

 She admitted having received a letter from the School Board notifying her that the board, at a meeting held on September 7, 1936, decided not to • grant her request for reinstatement and advising her, if she took issue with its decision, to seek redress through the Attorney General’s office or the courts, and that in this communication there was inclosed a copy of the Attorney General’s opinion in the matter. She also testified that a child was born to her in April, 1937, and that she had decided to await the final decision of the cases of other teachers, and particularly the Bertoniere one, before filing her suit.
 

 Superintendent Bauer testified . that the rule that the marriage of female teachers should be deemed equivalent to resignation was in effect for more than thirty-eight years and to his knowledge no exception had ever been made thereto.
 

 , Secretary Tete of the Orleans Parish ' School Board testified as to the extracts of the minutes of the board’s meetings at which the resignation of the relatrix' was accepted and the refund ordered made to .her from the Teacher’s Retirement Fund; he states that in the summer, fall, and winter following the enactment of the 1936 tenure statute the School Board was in doubt as to the effect of that law on married- female teachers and that the board decided to follow the Attorney General’s -opinion that female teachers who married after Act No. 164 of 1934 became effective and voluntarily formally resigned or left their positions without protest lost their legal status under the tenure statute.
 

 Section 172 of the rules and regulations of the Orleans Parish School Board reads as follows:
 

 “The marriage of a female teacher ipso facto vacates her position and is considered equivalent to a resignation.” '
 

 • Section 1, paragraph 4, of Act No. 164 of 1934, amending section 66 of Act. No.
 
 *495
 
 100 of 1922, provides: “No permanent teacher shall be removed from office except on written and signed charges of immorality, or of willful neglect of duty, or of incompetency, and then only if fo'und guilty after hearing.”
 

 Acts No. 100 of 1922, section 66, and No. 79 of 1936, contain similar provisions.
 

 Counsel for the defendant contends that, when once the formal resignation of a public employee has been duly accepted, it cannot be withdrawn, recalled, or rescinded by the employee, citing State ex rel. Bolin v. Webster Parish School Board et al., La.App., 2d Circuit, 150 So. 446, 447; Rockingham County v. Luten Bridge Co., 4 Cir., 35 F.2d 301, 66 A.L.R. 735, and 22 R.C.L., 559. He also argues that a litigant cannot' plead ignorance of the law as an excuse, referring to article 7 of the Revised Civil Code.
 

 Pretermitting the first defense and assuming that the rule of the School Board with reference to the marriage of female teachers was nullified by the provisions of Act No. 164 of 1934 and Act No. 79 of 1936, a view most favorable to the relatrix, but, without deciding that issue which the School Board argues should be resolved in its favor, we shall pass to a consideration of the question of laches.
 

 In the case of State ex rel. Pepper v. Sewerage & Water Board, 177 La. 740, 149 So. 441, 442, this court held:
 

 “[2] On the other hand, in legal significance, laches is regarded as not mere delay, but delay that works a disadvantage to another. Hence, there is and can be no fixed rule for determining what constitutes prompt action on the part of an aggrieved public employee to effectively assert his rights. Each case must depend upon its own peculiar facts. The question is one that calls for the exercise by the court of its sound discretion.”
 

 In the case of State ex rel. McCabe v. Police Board of City of New Orleans, 107 La. 162, 31 So. 662, 663, the relator was a captain on the city police force and was dismissed on October 18, 1899. On October 9, 1900 (one year less six days after his dismissal), he filed mandamus proceedings. In dismissing his suit the court said:
 

 “The first thing that attracts our attention in the case is the unwarrantable delay of the relator in filing these proceedings, or in applying to the respondent board for a new trial. Without apparent reason, unless it was that he acquiesced in the dismissal, he permitted the delay for new trial to go by, and permitted one year to elapse without taking any steps to have himself reinstated, or to prevent the respondent board from filling the vacancy or supposed vacancy caused by his dismissal, or even to warn the respondent board against filling said vacancy. The neglect of relator to avail himself of his ordinary legal remedy of new trial might itself be held to be fatal to the present application for mandamus. High, Extr. Rem. (2d Ed.) p. 22. But we prefer to rest our decision oh the broader ground that the relator, if he contemplated the present proceeding, should at ■ least have warned the respondent board against fill
 
 *497
 
 ing the vacancy, and should not have waited so long before instituting the present proceeding. ‘The right to be reinstated may be lost by laches or unreasonable delay in making application for the writ.’ 19 Am. & Eng. Ehc. Law (2d Ed.) p. 774. ‡ $ ‡
 

 “Counsel for relator contends that this matter of unreasonable delay is not specially pleaded by the respondent as a ground of defense, and that in consequence it cannot be made the basis of the judgment of the court. The contention is made in view of the fact that the very learned judge a quo had, like us, made this delay the basis of his judgment. We, do not think that the matter of this délay needed to be specially pleaded. It is patent on the face of the record. All that the respondent needed to do was to make a full return of all the facts and circumstances of the matter, and it did so. No reproach, surely, could be made to the return on the score of not being sufficiently full and specific. It is for the court to say whether, on all these facts, the relator is entitled, or not, to the remedy of mandamus, — an extraordinary remedy, the granting or refusing of which addresses itself more or less to the discretion of the court. The court will grant or refuse the mandamus on the facts of the case as pleaded and proved, whether the legal deductions from these facts are specially pleaded or not.”
 

 In Crais v. City of New Orleans, 172 La. 931, 136 So. 7, decided on an exception of no cause or right of action, this court held that a dismissed fire department employee, delaying eighteen months before instituting suit for reinstatement and back salary, was guilty of laches, precluding relief.
 

 In State ex rel. Koehl v. Sewerage and Water Board of New Orleans, 179 La. 117, 153 So. 533, it was held that a mandamus suit to compel reinstatement of a cashier employed by the Sewerage & Water Board was barred by laches when not brought for almost a year.
 

 In State ex rel. Lutz v. Sewerage and Water Board of New Orleans, 179 La. 742, 155 So. 10, we held that a delay of one year was fatal to relator’s right to be reinstated.
 

 In State ex rel. Wiltz v. Sewerage & Water Board of New Orleans, 145 So. 34, the Court of Appeal for the Parish of Orleans held that a mandamus proceeding brought by discharged employee of City Water Board for reinstatement nearly eight months after mayor’s and board members’ alleged promises to reinstate him was properly dismissed for laches. We approved this decision by refusing to grant a writ of certiorari.
 

 In the case of People ex rel. Reith v. Polk et al., 138 App.Div. 497, 122 N.Y.S. 1048, it was held that a fireman was guilty of laches in bringing suit ten months after his application had been denied.
 

 Relatrix’ excuse for not instituting legal proceedings as suggested by the School Board after it had finally informed her on September 25, 1936, that it would not reinstate her was that she was in a delicate condition. She was pregnant from
 
 *499
 
 November, 1936, until April, 1937, and neither before' nor after this period did she take legal action — she having delayed doing so until September 21, 1937. She had reasonable time before and after her illness to take the proper legal steps to protect her interest, but failed to do so.
 

 The argument that she was justified in awaiting the final decision in a similar case was likewise made in People ex rel. Reith v. Polk et al., 138 App.Div. 497, 122 N.Y.S. 1048, and the court rejected it as unsoiind. This is particularly true in this case, because relatrix was notified by the School Board that she would not be reinstated except by order of court, and because, as found by the trial court, her case was different from the one previously filed.
 

 The case of State ex rel. Exnicios v. Com’rs of Port of New Orleans, 153 La. 705, 96 So. 539, cited by counsel for the relatrix, is distinguishable, as the court found that the employer advised the relator to defer the bringing of his action pending the decision of the court in a similar case.
 

 Finally, counsel for the relatrix argues that to successfully plead laches it must appear that the rights of the defendant were adversely or prejudicially affected by the delay in instituting the suit. Counsel says that the School Board, in the instant case, has not suffered any damage, injury, or loss as a result of the delay. He further contends that, in resigning, the relatrix was misled by the illegal rule of the School Board, and that, this being an equitable proceeding, defendant should not be permitted to profit by its own wrongful act.
 

 Answering these points in inverse order, it appears from the record that there was a controversy over the proper interpretation of the provisions of Act No. 164 o.f 1934 and Act No. 79 of 1936, with reference to the above-quoted rule of the School Board affecting married female teachers. The board took one position, relator another. The Schpol Board is not the legal advisor of school teachers, particularly in a matter where there is a controversy between them. Obviously, in such a situation, the teacher should seek the advice of her own counsel and not rely upon the board’s appreciation of the law. No attempt was made to mislead her. She voluntarily resigned after apparently concluding that the board’s ruling was correct. Later, she was advised that her only recourse for reinstatement was through the courts, yet she waited practically a year before filing her suit.
 

 Relatrix knew that, if she unreasonably delayed and gave the appearance of acquiescing in the action of the School Board, it would have to replace her with another teacher, for the public schools must remain open. This important public function cannot be made to depend upon the whim of a teacher in choosing the time she will legally assert her rights. The board and the public, therefore, would necessarily be prejudiced and placed at a disadvantage by the
 
 *501
 
 relatrix’s conduct in procrastinating. Otherwise, either the class would have to await her wishes or a teacher would have to be employed in her place and, if one were employed, she would then have to be dismissed and the public funds dissipated by paying two persons for a single service. State ex rel. Skelly v. Board of Port Com’rs, 159 La. 465, 105 So. 510; U. S. ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650. Confined to one case, this might not be a large amount and a great disturbance or disruption of public school system, but, if relatrix’ position is sound, then the principle she seeks to invoke would also apply in any similar situation, no matter how many teachers were involved. The record shows that there are several teachers asserting their rights in other suits under similar circumstances.
 

 Even if the court were to reinstate relatrix without pay, it would necessitate discharging the newly employed teacher and disrupting a relation which her neglect necessitated establishing. Furthermore, relatrix cashed the check sent to her by the School Board in payment of her claim under the Teacher’s Retirement Law and has kept the funds and has never made any tender thereof to th$ board.
 

 The case was jointly argued and submitted with the case of State ex rel. Mrs. Evelyn M. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834, this day decided.
 

 For the reasons assigned, the judgment appealed from is affirmed, relatrix to pay all costs.