HAAS *v.* HOLDER, TRUSTEE, ET AL.

[No. 27,453. Filed March 19, 1941.]

*Louis A. Savage,* of Jasper, and *Lutz, Johnson & Lutz,* of Indianapolis, for appellant.

*Waldo Hendrickson* and *J. W. Hendrickson,* both of Boonville, and *Thomas W. Lindsey* and *E. Menzies Lindsey,* both of Evansville, for appellees.

SHAKE, J.—The appellant brought this action to compel re-employment as a permanent teacher and to recover damages for breach of contract, under the original Teachers' Tenure Law (Acts 1927, ch. 97, p. 259), as it was before the amendment eliminating township schools (Acts 1933, ch. 116, p. 716, § 28-4307 et seq., Burns' 1933, § 6003 et seq., Baldwin's 1934). The amended complaint was in one paragraph, to which a demurrer for want of facts was overruled. Five paragraphs of answer were filed—the first a general denial and the others affirmative, to which there was a reply in denial. The cause was tried by the court without a jury, resulting in general findings and judgment for the appellees. The appellant's motion for a new trial was overruled, on which she assigns error on

the ground that the decision is contrary to law. The appellees have assigned cross-errors on the overruling of their demurrer to the complaint.

The facts are not in dispute, and we may say that the evidence was responsive to the issues formed by the pleadings. It was stipulated that:

". . . plaintiff (appellant) herein held a teaching position and taught in the public schools of Skelton School Township, Warrick County, Indiana, continuously, during the school year from the Fall of 1921 to the spring of 1930, and that she received emuneration (sic) therefor as provided in written Contracts of employment, signed by the plaintiff and the then duly elected, qualified and acting Trustee of the defendant, Skelton School Township, and that the plaintiff did not hold a teaching position, and did not teach in said schools during the school year beginning in the Fall of 1930 and ending in the spring of 1931; that the plaintiff again held a teaching position and taught in said schools continuously during the school year beginning in the Fall of 1931 and ending in the spring of 1933, and that for such teaching she received the compensation provided in written contracts signed by the plaintiff and the then duly elected, qualified and acting Trustee.

". . . that the plaintiff, during all the time mentioned in the plaintiff's complaint, was a qualified and licensed teacher of the State of Indiana, and also that the plaintiff was not guilty of any other causes for discharge on account of incompetency, insubordination, neglect of duty, or immorality."

There was also evidence that during the summer and fall of 1930, appellant asked the trustee for a school for the ensuing year, but was refused; that the following year she was promised a school if she would vote for and help support the trustee, and that after his election he gave her a school in the fall of 1931 and again in 1932; that the trustee each year succeeding,

though requested, refused to employ her, without reason assigned; that she received no notice of cancellation of or attempt to cancel her contract; that she has entered into no agreement with any trustee to surrender her rights as a tenure teacher; that there were about 13 teaching positions in the township schools for the year 1929-1930 and each subsequent year; that in the year 1930-1931 she worked some half days at the telephone exchange, and in the year 1935 substituted at Tennyson for 19 weeks, earning about $250, and otherwise was not employed during any of the school years when she was denied employment in the Skelton Township schools. Five teacher's contracts were in evidence, including one for the year 1929-1930 but none for subsequent years. Appellant testified that these "were turned in to the trustee at the end of school."

The propositions presented in support of the alleged error of the trial court in overruling the demurrer to the complaint are that the Tenure Act of 1927 contravenes Article 8, § 1, of the Constitution of Indiana, and that damages are not recoverable. In *Indiana ex rel. Anderson* v. *Brand* (1938), 303 U. S. 95, 58 S. Ct. 443, 82 L. Ed. 685, 113 A. L. R. 1482, the Supreme Court of the United States decided that the provision of our state Constitution which places upon the General Assembly the obligation to provide by law for a uniform system of common schools may not be construed to do violence to Article 1, § 10, of the federal Constitution, by which the states are prohibited from passing laws impairing the obligations of contracts. It may be observed that if the complaint entitles the appellant to any relief, it is good as against the demurrer. Under the authority of *Watson* v. *Burnett* (1939), 216 Ind. 216, 23 N. E. (2d) 420, the complaint is sufficient on the theory of an action for a mandatory

injunction. There is therefore no error available to the appellees arising out of the overruling of their demurrer.

Many aspects of this case were considered in *Lost Creek School Twp., Vigo County* v. *York* (1939), 215 Ind. 636, 21 N. E. (2d) 58, 127 A. L. R. 1287, but since the appellant has questioned the soundness of that decision, we deem it proper to supplement what was there said. The appellant takes the position that the word "indefinite" as applied to the contract referred to in the tenure statute is a mere fiction, and that said contract might as well have been denominated a "tenure" or an "indeterminate" contract. It is urged that a proper interpretation of the express language of the statute must lead to the inevitable conclusion that it was the intent of the Legislature that, in the absence of cancellation for cause, the last express contract entered into before the teacher's wrongful discharge must be deemed to be continuing and to supply the terms and conditions of employment, particularly as to the compensation to be paid.

We pointed out in the York case that the Tenure Act was by its terms made supplemental to the general statute governing teachers' contracts. The language of the tenure statute is that:

"This act shall be construed as supplementary to an Act of the General Assembly, page 195, Acts 1921, entitled 'An act concerning teachers' contracts and providing for the repeal of conflicting laws.'" § 28-4312, Burns' 1933, § 6008, Baldwin's 1934.

The General Assembly has thereby enjoined upon us the obligation of harmonizing the Tenure Act with the general legislative policy of the state as it pertains to the administration of the common school system, and

especially as the Tenure Act relates to the subject of teachers' contracts, if this can be done. We are required by statute to do what the courts of other jurisdictions have found it necessary to do in order to implement the theory of tenure legislation with the broader concepts of the place of free education in popular government. By the great weight of authority, the rule seems to be that a tenure act does not preclude the employing agency from reducing the teacher's compensation below what it was before the breach occurred, so long as the salary to be paid equals or exceeds the minimum fixed by law and the teacher's classification for that purpose is not arbitrary nor unreasonable. This is necessary in order that administrative officers may be free to exercise the sound discretion with which they are charged; so that the fiscal affairs of the school corporations may be adjusted in accordance with the ability of taxpayers to bear the burdens of the educational system; and to the end that the tenure law may not itself be utilized to defeat the broad public policy of the commonwealth. The cases referred to are collected and annotated in 110 A. L. R. 800, 113 A. L. R. 1498, and 127 A. L. R. 1310. These are among the considerations that impel us to hold that a tenure teacher's indefinite contract is not *per se* enforceable, but that the teacher whose contractual rights have been violated must resort to a court of equity for redress.

The obligation of a tenure contract is not impaired by holding that it is only enforceable by a proceeding in equity, for the reason that such jurisdiction arises from the nature of the contractual right created by the tenure statute and not from its repeal.

We are not impressed with the contention that a court of equity is without power to grant adequate

relief in an action for the reinstatement of a ▮▮▮▮ wrongfully discharged tenure teacher. It has been suggested that some months will ordinarily elapse between the commencement of such an action and the rendition of a judgment, and that further delay may be occasioned by appeal; that, meanwhile, the school corporation may have contracted with another teacher while the plaintiff remains unemployed; and that before the plaintiff's rights are finally determined, another school year may have begun with a repetition of the same situation, *ad infinitum.* The answer to this argument is found in the application of the maxims that "equity will not suffer a wrong to be without a remedy" and that "equity delights to do justice and not by halves." On these fundamental concepts rests the rule that when a court of chancery has once acquired jurisdiction of a cause, it may go on to complete adjudication, even to the extent of establishing legal rights and creating legal remedies. Thus, it has been held that in an action for specific performance, the court may, in addition to decreeing specific performance, award such legal damages as have resulted from delay in the performance of the contract. The principle is applicable to the situation stated above. If a teacher brings an action upon the theory that she is entitled to a definite contract and prevails, it is well within the power of a court of equity to award her incidental damages. *Steindler* v. *Virginia Pub. Service Co.* (1934), 163 Va. 462, 175 S. E. 888, 95 A. L. R. 220, and annotations following. The measure of the damages which the court may allow as an incident to equitable relief is limited to the compensation fixed in the definite contract to which the teacher is found entitled. The period for which there may be a recovery is between the commencement of the action and reinstatement, during

which the teacher is deprived of serving, with proper deductions for other earnings, if any, which she may or might have enjoyed in the meantime. A statute of this state now provides that every contract of employment between a teacher and a school corporation shall be renewed and continue in force on the same terms and for the same wages, with certain exceptions favorable to the teacher, unless one of the parties notifies the other to the contrary not later than the first of May. Acts 1939, ch. 77, § 1, p. 457, § 28-4321, Burns' 1933 (Supp.), § 6008-4, Baldwin's Supp. 1939. This allows a teacher who has been wrongfully discharged ample opportunity to take the necessary legal steps to obtain relief, and courts of equity are adequate for that purpose. We cannot conceive of a situation where a tenure teacher who acts with reasonable diligence may be deprived of a full and complete remedy.

One other question remains and that is the applicability of the doctrine of laches to the factual situation. "Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another." 21 C. J. 210. It would seem that the defense of laches should be peculiarly appropriate to an action to enforce rights under the tenure statute. The teacher is afforded ample opportunity to know in advance of the beginning of the succeeding

school year that she will not be re-employed. She is also charged with knowledge of the fact that if she is not re-employed another teacher will fill the position which she is entitled to occupy, and that public funds to which she is entitled will be paid to another teacher. The Supreme Court of Louisiana considered the subject of laches as applied to unreasonable delay on the part of a teacher to protect her rights under a tenure statute in *State* v. *Orleans Parish School Board* (1938), 189 La. 488, 500, 179 So. 830, 834, and in arriving at the conclusion that the doctrine is applicable said:

"Relatrix knew that, if she unreasonably delayed and gave the appearance of acquiescing in the action of the School Board, it would have to replace her with another teacher, for the public schools must remain open. This important public function cannot be made to depend upon the whim of a teacher in choosing the time she will legally assert her rights. The board and the public, therefore, would necessarily be prejudiced and placed at a disadvantage by the relatrix's conduct in procrastinating. Otherwise, either the class would have to await her wishes or a teacher would have to be employed in her place and, if one were employed, she would then have to be dismissed and the public funds dissipated by paying two persons for a single service. . . . Confined to one case, this might not be a large amount and a great disturbance or disruption of public school system, but, if relatrix' position is sound, then the principle she seeks to invoke would also apply in any similar situation, no matter how many teachers were involved. . . .

"Even if the court were to reinstate relatrix without pay, it would necessitate discharging the newly employed teacher and disrupting a relation which her neglect necessitated establishing."

The appellees' fourth paragraph of answer interposed the defense of laches. It appears from the stipu-

lation of the parties and the evidence that the appellant, being at the time a tenure teacher, demanded and was denied a position for the school year beginning in 1930. She taught in 1931 and 1932, but was again refused a school in 1933, and she has not since been allowed to teach. She has demanded a school each year since 1933, and on June 14, 1938, made a written demand for a position for the school year beginning in September. The demand was refused, and this action was begun on June 16th. The right of a tenure teacher to employment is made continuing by statute, and failure to assert that right when it is violated does not necessarily amount to a waiver of the tenure status. "There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another. Each case is to be determined according to its own particular circumstances. In other words, the question of laches is addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion." 21 C. J. 217; *Ryason* v. *Dunten* (1905), 164 Ind. 85, 96, 73 N. E. 74, 77. We cannot say as a matter of law that the appellant was guilty of laches in the prosecution of her action for the last year for which relief was sought, nor can we say that the trial court abused its discretion in denying relief for the years prior to 1938.

The judgment is reversed, with directions to grant a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 32 N. E. (2d) 590.