533 So.2d 1359 (1988)
Jonathan WILLIAMS, Plaintiff-Appellant,
v.
LAFAYETTE PARISH SCHOOL BOARD, Defendant-Appellee.
No. 87-946.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
Writ Denied January 20, 1989.
*1360 Sylvia R. Cooks, Lafayette, for plaintiffappellant.
Roy & Hattan, L. Lane Roy, Lafayette, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
GUIDRY, Judge.
On December 23, 1983, plaintiff, Jonathan Williams (hereafter Williams), filed this suit against defendant, Lafayette Parish School Board, seeking reinstatement as a tenured teacher. In the alternative, he sought reinstatement as a probationary teacher. In the further alternative, he alleged his entitlement to continuous employment with the Lafayette Parish school system pursuant to an alleged verbal agreement, or damages for breach of said agreement. Plaintiff also sought judgment against defendant in the sum of $37.50 (unpaid wages allegedly owed to him upon termination of his employment) together with penalties and attorney's fees, pursuant to La.R.S. 23:632.
After a trial on the merits, the trial court denied plaintiff's demand to be recognized as a tenured teacher but ordered his reinstatement as a probationary teacher with the Lafayette Parish school system.[1] The trial court also concluded that defendant's failure to pay plaintiff the full amount of wages due him upon termination of his employment was a clerical oversight and denied plaintiff's claim for penalties and attorney's fees.[2] Plaintiff appealed.

FACTS
Jonathan Williams was first employed by the Lafayette Parish School Board as a teacher at Carencro High School for the 1978-1979 school year. Thereafter, he received one year contracts from the School Board as a teacher at the same school for the school years 1979-1980 and 1980-1981. In the spring of the latter academic year, he was summoned to a meeting which was attended by Williams, his principal, Don Bourgeois, A.J. Antoine, Director of Secondary Education and Supervisor of Math and Science, and Louis Lloyd, Supervisor of Social Studies. At this meeting, Bourgeois informed Williams that, because of noted deficiencies in his teaching performance, he did not intend to recommend his continued employment by the School Board, which recommendation, if followed, would result in Williams being terminated and denied tenure under La. R.S. 17:441 et seq. Williams was informed by the officials present that he could avoid this unfavorable recommendation by his principal, and his almost certain termination by the School Board, by voluntarily resigning his position as a teacher effective at the end of the 1980-1981 session. This, he was told, would avoid an unfavorable recommendation appearing on his record and enhance his chances for future employment with the Lafayette Parish school system or some other school system. Further, he was informed that if he resigned, "he would start his probationary period over and then we would get a chance to evaluate him and see if he improved within the probationary period or not". On March 27, 1981, Williams voluntarily submitted his resignation effective June 4, 1981. Williams stated in his letter that the reason for his resignation was to "seek other employment due to recent financial hardship".
Subsequent to Williams' resignation from the school system, he was employed for the fall semester of the school year 1981-1982 at Lafayette High School to substitute for a teacher who was on a sabbatical leave. This substitute position continued until January 20, 1982. In the spring of 1982, Williams did not teach anywhere. For the school year 1982-1983, Williams *1361 accepted a one year substitute teaching assignment in the Lafayette Parish school system at Acadiana High School. Since the latter assignment, Williams has not been employed or offered employment in the Lafayette Parish school system.
At the termination of his last teaching position, Williams advised the School Board office that he had been underpaid in the amount of $37.50 because of a miscalculation in the number of years of his teaching service. This discrepancy was brought to the attention of the business department in August of 1983. Due to a clerical oversight, Williams was not paid this deficiency until January of 1984, after the institution of this suit.
On appeal, Williams urges trial court error as follows:
1. The trial court erred when it failed to find that plaintiff was a tenured teacher in the Lafayette Parish school system as a result of his employment from August 1978 to January 1982.
2. The trial court erred in failing to find that plaintiff was entitled to back pay and credit for the years he was wrongfully dismissed from the Lafayette Parish school system.
3. The trial court erred when it reserved to the defendant the right to terminate plaintiff's probationary status on some unspecified date in the future based upon the facts litigated in this suit.
4. The trial court erred when it refused to award plaintiff penalties and attorney's fees for the defendant's failure to pay plaintiff's full wages at the time of the termination of his employment with defendant.
We first consider plaintiff's contention that he became a tenured teacher as a result of his continuous teaching in the Lafayette Parish school system from August 1978 to January 1982.
La.R.S. 17:442 provides in pertinent part as follows:
"Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor."
The record evidence indicates that plaintiff was first employed by the Lafayette Parish school system for the 1978-1979 calendar year. Subsequently, plaintiff signed two additional yearly contracts for the 1979-1980 and 1980-1981 calendar years. However, prior to completion of the last year (the third probationary year), plaintiff resigned his teaching position, the result of which was to terminate plaintiff's employment with defendant prior to the accrual of the three calendar years necessary to acquire tenure. State, ex rel. Piper v. East Baton Rouge School Board, 35 So.2d 804 (La.1948); Jackson v. St. Landry Parish School System, 407 So.2d 51 (La. App. 3rd Cir.1981), writs denied, 412 So.2d 98, 99 (La.1982); Coburn v. Vernon Parish School Board, 364 So.2d 231 (La.App. 3rd Cir.1978). Therefore, as the learned trial judge succintly states in his written reasons for judgment:
"... as of the effective date of the resignation, plaintiff had not acquired tenure and by voluntarily separating himself from the system the `probation period' was interrupted before vesting of tenure, and such period of service (school years 1978-1979, 1979-1980 and 1980-1981) could not thereafter serve to vest tenure...."
With regard to whether plaintiff's resignation was voluntary, the trial court concluded that "... such resignation, while clearly made after a discussion with system officials, was voluntary on plaintiff's part and not forced or coerced by system officials...". A thorough review of the record reflects that plaintiff's resignation was free, voluntary and uncoerced. The trial judge so held and his conclusion is clearly supported by the record. The only action taken by system officials relative to plaintiff's resignation was the convening of a meeting with plaintiff wherein certain *1362 options regarding plaintiff's employment were merely explained to him. This action, in and of itself, can not be construed as coercion or duress.
In support of his position that he should be declared a tenured teacher, appellant suggests that his resignation and his subsequent reemployment, albeit temporary, were a subterfuge by defendants to avoid the effect of La. R.S. 17:441 et seq. There is no evidence in the record to support this contention. Therefore, the issue becomes whether plaintiff's voluntary resignation was ineffectual, as against public policy, such that following his subsequent temporary employment in the fall of 1981, he acquired tenure.
So far as our research discloses, this precise issue is res nova in Louisiana. Therefore, we looked to other jurisdictions for guidance in the matter. There exist two lines of thought on this question. One line of cases holds that a resignation by a teacher on suggestion of school authorities, prior to the expiration of the probationary term when he/she is subsequently re-employed, is ineffectual, being against public policy, and in direct contravention of the tenure law. The courts in those cases reason that the resignation has the effect of lengthening the years of service required under the tenure law, thus frustrating the legislative determination of the service required for tenure. See Haas v. Madison City Bd. of Ed., 380 So.2d 873 (Ala.Civ. App.1980); Sherman v. Board of Trustees of Siskiyou Union High School, 9 Cal. App.2d 262, 49 P.2d 350 (1935); Hosford v. Board of Education of City of Minneapolis, 201 Minn. 1, 275 N.W. 81 (1937). On the other hand, a second line of cases holds that as long as a resignation on the part of a teacher is voluntary and without coercion or duress, it will serve to break the continuity required under the tenure law and is not against public policy. Merman v. Calistoga Joint Union High School Dist., 5 Cal.2d 438, 55 P.2d 195 (1936); Chalmers v. State Board of Education, 11 N.J.Misc. 781, 168 A. 236 (1933); Carson City School Dist. v. Burnsen, 96 Nev. 314, 608 P.2d 507 (1980); Norwitz v. Board of Education of Harrison Tp., 128 N.J.L. 13, 23 A.2d 914 (1942); State ex rel. Brubaker v. Hardy et al, 5 Ohio St. 2d 103, 214 N.E.2d 79 (1966). We find the latter decisions and the reasoning employed therein persuasive. The reasoning of the courts in the cited cases is similar to the reasoning employed in two early Louisiana Supreme court cases, State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830 (1938) and State ex rel. McMurry v. Orleans Parish School Board, 189 La. 502, 179 So. 834 (1938). In these cases, tenured teachers, who were females and recently married, voluntarily resigned their teaching positions based upon an erroneous belief that a school board regulation which compelled their resignation upon marriage was valid. Although the Supreme Court, in both cases, affirmed the trial court's rejection of plaintiffs' demands on the ground of laches, the court in McMurry, supra, responded as follows to appellant's argument that her resignation was invalid and therefore, the doctrine of laches was inapplicable:
"It is argued by counsel for the relatrix that the rule of laches should not be applied in this case, because the School Board persisted in adhering to its illegal rule that female married teachers were considered as having resigned as a result of their marriage when this board's rule was nullified by the provisions of Act No. 164 of 1934 and Act No. 79 of 1936. The board's position was that teachers employed before Act No. 164 of 1934 became effective were controlled by its rule as it constituted part of their contract of employment. If there was a difference of opinion between the board and female married teachers as to whether or not its rule was legally effective, the complaining teacher cannot blame the School Board for her resignation when it was voluntarily given without consulting an attorney as to her legal status or rights. Neither the School Board nor the alleged aggrieved teacher can successfully plead ignorance of the law as an excuse. R.C. C. art. 7.
This case was jointly argued and submitted with the case of State ex rel. Mrs. *1363 Anna Calamari v. Orleans Parish School Board, La.Sup., 179 So. 830, this day decided. The cases are similar, and the reasoning and the authorities therein cited are pertinent here." (Emphasis ours).
In the instant case, we agree with the trial court's obvious conclusion that the actions of the parties, under the circumstances, were not intended to circumvent, evade, or frustrate the purpose and intent of the tenure law of Louisiana. Rather, the option allowed plaintiff was prompted by the well-intentioned desire of his superiors that the recommendation against tenure would not appear on his record, thus facilitating his future employment and the opportunity to overcome, if possible, the deficiencies which his superiors noted in his teaching performance. We do not consider such action on the part of the defendant school system to be contrary to public policy or in contravention of the tenure law. For these reasons, we find no error in the learned trial judge's conclusion that plaintiff did not acquire tenure as a result of his service with the Lafayette Parish school system. Our decision in this regard renders appellant's second assignment of error moot.
The effect of the trial court's determination that Williams enjoys probationary status in the Lafayette Parish school system is not at issue on this appeal. Appellant's third assignment of error is, therefore, without merit.
We turn finally to appellant's contention that the trial court erred in denying him penalties and attorney's fees.
La. R.S. 23:632 provides:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
The trial court properly denied plaintiff's claim for penalty wages. Plaintiff failed to establish that his employer was arbitrary, capricious or in bad faith in failing to pay him his full wages upon termination. Rather, the record clearly reflects that the employer's failure to pay plaintiff the additional sum of $37.50 was a mere clerical error. La. R.S. 23:632 is a penal statute subject to strict construction. Therefore, penalty wages are not to be imposed when the facts reflect a reasonable good faith explanation for non-payment. Sifers v. Exxon Corp., 338 So.2d 763 (La.App. 4th Cir.1976), and cases cited therein.
The record reflects that demand for the $37.50 deficiency was made by appellant prior to institution of suit. Consequently, although this amount was eventually paid after suit had been instituted, nonetheless this suit, insofar as it demanded payment of the deficiency, must be considered a "well-founded" suit within the intendment of La.R.S. 23:632. Therefore, although not entitled to penalty wages, the plaintiff is entitled to an award of attorney's fees. Jones v. Hebert and LeBlanc, Inc., 499 So.2d 1107 (La.App. 3rd Cir.1986); Landry v. Pauli's, Inc., 496 So.2d 431 (La. App. 5th Cir.1986), writ denied, 500 So.2d 428 (La.1987). The attorney's fees awarded should apply only to the time and effort expended by plaintiff's counsel in securing payment of the deficiency wages. Since the amount in question is such a small amount, i.e., $37.50, and said amount was paid to plaintiff shortly after institution of suit, we conclude that an award of attorney's fees in the amount of $500.00 is appropriate.
For the foregoing reasons, the judgment of the trial court is amended to include an award of $500.00 in attorney's fees to plaintiff. *1364 In all other respects, the judgment of the trial court is affirmed. Costs of appeal are assessed one-half (½) to appellant and one-half (½) to appellee.
AFFIRMED AS AMENDED.
STOKER, J., concurs in part, dissents in part and assigns written reasons.
STOKER, Judge, concurring in part and dissenting in part.
With respect I dissent from the principal majority holding that the plaintiff failed to acquire tenure under the teacher tenure law. I agree with and concur in the majority's action in affirming the denial of penalty wages but in amending the judgment to award attorney's fees contrary to the trial court's action.
As to the tenure question, the majority opinion cites two lines of cases, one supporting each of the two positions on the issue. It then follows the line of jurisprudence denying tenure on the basis of two 1938 cases from the Louisiana Supreme Court, State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830 (1938) and State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834 (1938). Aside from being grounded on laches those cases held that as long as a resignation was voluntary it could not be withdrawn. That holding has been applied here to support a holding that there was a break in the continuity of the probationary teacher's service and to hold that tenure was not acquired.
I dissent from the application of those rulings to this case for two reasons. First, I respectfully submit that the rule should be reconsidered, especially under the facts of this case. Second, the facts of this case are distinguishable from those of Calamari and McMurray. Neither Calamari nor McMurray were concerned with completion of the required three years of teaching necessary for acquisition of teacher tenure. They were already tenured. They wanted to return to work as teachers. They attempted to withdraw their resignations; and, when their requests were denied, they sued for reinstatement as permanent teachers and for back pay. Jonathan Williams, plaintiff in this case, was actually reemployed. The question as to him is whether he completed his probationary three years as a result of the rehiring. (As the school year consisted of a term of nine months he would not normally have taught in the summer months. His return in the fall of 1982 kept him right on schedule.) Therefore, the distinction is between two teachers who were held to their resignations and not rehired and plaintiff here who was not held to his resignation and was rehired and the consequences of the rehiring. The defendant School Board ignored Williams' resignation. For this reason the fact that Williams' resignation may have been voluntary is immaterial in his case. Williams did teach for the required three years at the behest of the School Board, and I see no policy reason for denying him tenure.
Actually, acquisition of tenure was not at issue in Calamari and McMurray. The only way the Louisiana teacher tenure law came into play as to them was that the two teachers claimed that, as teachers who had already acquired tenure, they could not lose their employment because of their illadvised action of submitting resignations in the mistaken belief that female teachers could no longer teach after they became married.
Where a probationary teacher, for whatever reason, resigns as of June 4 (as plaintiff did) but completes the spring session and thereafter accepts a teaching position beginning with the fall session, the resignation has no real effect on the teacher's actual continuous service. Such service is the same as if no resignation had been tendered. Such service is no different from that of other teachers (tenured or untenured) who submit no resignation.
I understand that submission of a formal resignation as a teacher may trigger some administrative adjustments. However, such adjustments have no bearing on tenure status under the facts of this case. Administratively, submission of a resignation frees the particular teaching position *1365 previously occupied by the resigning teacher so that a replacement may be found and assigned to the position. The teacher who resigns may not continue to be eligible for group insurance or other fringe benefits. However, continuance of such benefits has no bearing on acquisition of tenure. Administratively (from the School Board's point of view) a resignation may be deemed a break in service during the interim from the time of resignation until rehiring, but that has no valid connection with tenure. If a school system picks up a teacher after a summer vacation as was done here, the services should be considered to have been continuous.
There is a difference in refusing to rehire a tenured teacher who has resigned and rehiring a teacher after resignation and refusing to accord the teacher tenure status.
With respect, therefore, I dissent in part and concur in part.
NOTES
[1] Defendant has not questioned the trial court's reinstatement of plaintiff as a probationary teacher. This determination is now final and not subject to appellate review.
[2] Following institution of suit, defendant paid plaintiff the total of his unpaid wages, i.e., $37.50. Therefore, this appeal concerns only the trial court's ruling on the issue of penalties and attorney's fees.