663 So.2d 281 (1995)
Aubrey N. SMITH, Jr., Plaintiff-Appellant,
v.
EVANGELINE PARISH SCHOOL BOARD, et al., Defendant-Appellee.
No. 95-284.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
Rehearing Denied December 14, 1995.
Kenneth Pitre, Eunice, for Aubrey N. Smith Jr.
*282 Robert Lloyd Hammonds, Baton Rouge, for Evangeline Parish Police Jury.
Before DOUCET, C.J., and YELVERTON and PETERS, JJ.
DOUCET, Chief Judge.
This case arises out of the failure of the Evangeline Parish School Board (the Board) to renew Aubrey Smith's contract of employment as the principal of Mamou Upper Elementary School.
In July 1989, the Board appointed the plaintiff-appellant, Aubrey Smith, to the position of principal of the Mamou Upper Elementary School. In July 1990, the Board and Smith entered a contract under which Smith was to have the position of principal for two years ending June 3, 1992.
In May 1992, the Board voted not to renew Smith's contract as principal. The Board advertised the position in the local paper. It was not until August 1992 that the Superintendent of the Evangeline Parish Schools, Larry Broussard, verbally notified Smith that his contract had not been renewed. Smith was never given written notice of the non-renewal of his contract. He did not ask for and was not given any reason for the decision not to renew his contract. The Board offered Smith a job as a teacher at Ville Platte High School at the regular teacher's salary rather than at the higher principal's salary. By a letter dated August 17, 1992, Smith resigned "as a teacher at Ville Platte High School...." He applied for retirement benefits on the same day. The Board, at its regular meeting of August 19, 1992, accepted Smith's resignation as principal. The Board notified Smith of its acceptance by letter dated September 3, 1992.
On May 13, 1993, Smith filed this suit against the Board and its insurer alleging that he was wrongfully terminated from his position as principal of the Mamou Upper Elementary School. He alleged that the Board was required by La.R.S. 17:444(B)(4)(c)(iv) to give him written notice of its reason for not renewing his contract. He further alleges that the contract itself required that he be given written notice of the decision not to renew at least 60 days before June 30, 1992. He prayed for reinstatement with back pay and damages in the amount he lost by not being able to participate in the Deferred Retirement Option Plan available to participants in the Louisiana Teachers' Retirement System.
After a trial on the merits, the district court judge rendered judgment in favor of the Board dismissing the plaintiff's action at his cost. The district judge gave written reasons for his decision stating that:
"The Court is of the opinion that the effect of plaintiff's retirement and the acceptance thereof by the Evangeline Parish School Board at its meeting precludes plaintiff's right to litigate this matter.
Whether the Evangeline Parish School Board followed the statutory requirements of L.R.S. 17:444 as amended became moot upon Mr. Smith's retirement, which was effective upon acceptance by the Board. The Evangeline Parish School Board thereafter had no obligation to follow the termination steps required by the statute.
Mr. Smith would have been well advised to have sought legal advise (sic) prior to his retirement and the acceptance of its emoluments. The Court cannot now supply him with a remedy which by his actions he foreclosed."
On appeal, Smith contends that his resignation and retirement were induced by error, coercion, fraud or duress, and are therefore irrelevant to the issue of whether he was wrongfully terminated. Smith argues that his resignation was not voluntary in that he resigned only because his contract was not renewed. Had he known the Board's action was illegal, he would not have retired. This, he contends, was sufficient error to vitiate his consent to retire. He further argues that the Board committed fraud in failing to inform him that his contract had been statutorily amended by La.R.S. 17:444 to require that he be given notice of the reason for non-renewal. Smith argues that the failure to renew was illegal. He alleges the non-renewal of his contract caused him to fear injury to his property by loss of salary, as well as injury to his reputation. This, he asserts, was duress sufficient to vitiate his consent to retire.

*283 "Consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art. 1949. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art. 1953."
Smith v. Remodeling Service, Inc., 94-589, pp. 4-5 (La.App. 5 Cir. 12/14/94), 648 So.2d 995, 998-999.
A thorough review of the record reveals no error by the plaintiff which would affect the validity of his decision to retire. Plaintiff's arguments in favor of a vice of consent rely heavily on the assumption that the Board knowingly acted illegally. There is no support of record for this assumption. The success of his arguments, especially concerning error and fraud, depend on his ignorance of the laws affecting his contract and his employment. We cannot reconcile these arguments with the principle that "[n]o one may avail himself of ignorance of the law." La.Civ.Code art. 5.
Nor does the record support his assertion that his retirement was coerced. There is nothing of record to suggest that the Board tried to trick Smith into retiring. While certain Board officials stated the Board had hoped that Smith would retire, there is no evidence that this hope was ever conveyed to Smith, that retirement was suggested to him or that any attempt was made to influence his decision in this matter. The record reflects that the resignation was free, voluntary and uncoerced.
Therefore, the issue before us is the effect of Smith's voluntary resignation and retirement before bringing suit, on his action for wrongful termination. This issue is res nova. However, the courts of this state have dealt with analogous situations. In Williams v. Lafayette Parish School Bd., 533 So.2d 1359 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1237 (La.1989), this court dealt with the effect of voluntary retirement on the accrual of tenure. In that case, the court cited two early Louisiana Supreme Court cases, State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830 (1938) and State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834 (1938), stating that:
"In these cases, tenured teachers, who were females and recently married, voluntarily resigned their teaching positions based upon an erroneous belief that a school board regulation which compelled their resignation upon marriage was valid. Although the Supreme Court, in both cases, affirmed the trial court's rejection of plaintiffs' demands on the ground of laches, the court in McMurray, supra, responded as follows to appellant's argument that her resignation was invalid and therefore, the doctrine of laches was inapplicable:
`It is argued by counsel for the relatrix that the rule of laches should not be applied in this case, because the School Board persisted in adhering to its illegal rule that female married teachers were considered as having resigned as a result of their marriage when this board's rule was nullified by the provisions of Act No. 164 of 1934 and Act No. 79 of 1936. The board's position was that teachers employed before Act No. 164 of 1934 became effective were controlled by its rule as it constituted part of their contract of employment. If there was a difference of opinion between the board and female married teachers as to whether or not its rule was legally effective, the complaining teacher cannot blame the School Board for her resignation when it was voluntarily given without consulting an attorney as to her legal status or rights. Neither the School Board nor the alleged aggrieved teacher can successfully plead ignorance of the law as an excuse. R.C.C. art. 7.
This case was jointly argued and submitted with the case of State ex rel. Mrs. Anna Calamari v. Orleans Parish School Board, La.Sup., 179 So. 830, this day decided. The cases are similar, and the reasoning and the authorities therein *284 cited are pertinent here.' (Emphasis ours)."
Williams v. Lafayette Parish School Bd., 533 So.2d at 1362-1363.
Applying this reasoning to the case before us, Smith cannot blame the Board for his resignation and retirement when it was voluntarily given without consulting an attorney as to his legal status or rights. Smith may not blame his ignorance of the law on the Board. Accordingly, we find no error in the trial judge's conclusion that Smith's resignation and retirement rendered moot his cause of action for wrongful termination.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the plaintiff/appellant.
AFFIRMED.