35 So.2d 804

**STATE ex rel. PIPER v. EAST BATON ROUGE PARISH SCHOOL BOARD.**

No. 38304.

June 15, 1948.

See also 212 La. 714, 33 So.2d 206.

Maurice R. Woulfe, of New Orleans, for relator-appellant.

Taylor, Porter, Brooks & Fuller, of Baton Rouge, for respondents-appellees.

HAWTHORNE, Justice.

Relator, C. B. Piper, instituted this suit for reinstatement as principal of the McKinley High School situated in the Parish of East Baton Rouge, and for payment of his salary from the date of his discharge, which he contends was illegal, at the rate of $2,756.00 per annum, payable monthly.

It is relator's contention that he has satisfactorily performed all of the required duties as principal of the school for a pro-

bationary term of three years, and has acquired tenure and become a permanent teacher under the provisions of Section 48 of Act No. 100 of 1922, as amended by Act No. 58 of 1936; that his attempted dismissal by the School board is null and void and of no force and effect in that the school board did not comply with the provisions of the act in certain specified details and particulars, and, further, that certain charges filed with the school board were false and untrue and not based upon any law or valid reason, and that the action taken by the school board in respect thereto was illegal, null, and void. In the alternative he alleges that, in the event this court should find that he has not acquired tenure and became a permanent teacher as provided by the laws of this state but was a probationary teacher, then his purported dismissal was null and void and contrary to the above cited act in that (1) no written recommendation, accompanied by valid reasons therefor, of the superintendent of schools of East Baton Rouge Parish was ever presented to the school board, and (2) he was not at any time advised or notified in writing by the school board that he had been discharged and dismissed.

The facts pertinent to this decision are these:

Relator was first appointed principal of the McKinley High School on August 20, 1942, as disclosed by certified copy of resolution of the East Baton Rouge Parish School Board attached to his petition, this employment being for the scholastic year 1942–1943. He was continued in this employment for the scholastic year 1943-1944, and on June 21, 1944, was employed for the scholastic year 1944-1945 at a monthly salary of $216.67. His salary was to be increased to the amount of $2,756 a year, payable monthly, for the scholastic year 1945-1946.

On February 26, 1945, Dr. Clark L. Barrow, parish superintendent of schools, informed relator by letter—receipt of which relator acknowledged—that his services were not satisfactory and that he, as parish superintendent, would not recommend relator to the school board for reappointment as principal for the 1945-1946 school session, and that he would not recommend that relator be placed on tenure in the parish school system. This information that Dr. Barrow would not recommend relator as a permanent teacher was again conveyed to relator by the superintendent in April. Dr. Barrow subsequently repeated to relator that he would not recommend him for tenure, and read to relator his recommendation in this matter and valid written reasons therefor, which he intended to submit to the school board at its next meeting to be held on June 7, 1945.

At an official meeting of the school board held on June 7, 1945, all members present, Dr. Barrow refused to recommend relator for permanent tenure, giving his reasons therefor, all in writing. At this meeting

Dr. Barrow put before the board in writing the names of the teachers whom he recommended to be employed in the parish school system for the 1945-1946 session. The minutes of this meeting disclose that the school board unanimously adopted the list as submitted, and that relator's name was omitted from those to be employed at the McKinley High School. These minutes further show that Superintendent Barrow informed the board that Professor Piper, relator, was not recommended for reappointment and permanent tenure as principal of the McKinley High School because his services had been unsatisfactory.

On June 21, a few days after this meeting of the school board, Dr. Barrow informed Professor Piper by letter that the East Baton Rouge Parish School Board at its regular meeting on June 7 did not reelect him as principal of the McKinley High School, and that this action was taken after he had officially advised the board that he, as superintendent, could not recommend Piper for tenure as a permanent teacher because his services had been unsatisfactory.

By formal resolution adopted by the school board at its next regular meeting held on September 6, 1945, relator was discharged and dismissed as principal of the high school and was declared to be no longer an employee of the East Baton Rouge Parish School Board. This resolution set out the date of Professor Piper's first employment and the various notifications made to him by Dr. Barrow that he would not be

reemployed (all as set out hereinabove), and especially the fact that Dr. Barrow recommended in writing to the board at its meeting of June 7, 1945, that Piper be dismissed and discharged as an employee, accompanying this recommendation by valid written reasons therefor, and that the board concurred in, and adopted, this written recommendation of Dr. Barrow. In a letter dated September 7 relator was informed that he was discharged and dismissed as principal of the school and as an employee of the board, and a copy of the resolution adopted September 6 was enclosed with this letter.

On September 20, 1945, the present suit was instituted against the East Baton Rouge School Board and the parish superintendent of schools. After trial on the merits, relator's demands were rejected, and he has appealed.

Respondents concede that, if relator has acquired tenure and is a regular and permanent teacher, the school board's action in discharging him without a hearing, and not in the manner provided for the discharge of a permanent teacher by the act, is without effect. The first question for our consideration, then, is whether Professor Piper has acquired the status of a permanent teacher within the meaning of Section 48, Act 100 of 1922, as amended. The second paragraph of that section reads as follows:

"*Each teacher shall serve a probationary term of three years, such probationary term*

*to be reckoned from the date of his first appointment in that parish in which the teacher is serving his probation.* During said probationary term the parish school board may dismiss or discharge any probationary teacher upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish." (Italics ours.)

The trial judge concluded, and, we think, correctly so, that, since relator was first appointed principal on August 20, 1942, his probationary term of three years expired on August 20, 1945. The act in plain terms provides that each teacher shall serve a probationary term of three years, which means three years from the date of his first appointment— that is, three years consisting of 12 months each. To hold otherwise, this court would, in effect, be legislating instead of interpreting the quoted provisions of the act. If the Legislature had meant for the probationary term to be three scholastic years, it could easily have said so, and it is to be observed that in Section 49 of the act the term "scholastic year" is used where scholastic year is meant—that is, "No person shall be appointed to teach without a written contract for the scholastic year * * *."

■ The Louisiana Civil Code directs that the words of a law are generally to be understood in their most usual signification. Art. 14, La.Civ.Code. The word "year" in its ordinary signification means a period of 365 days—or 12 months. Black's Law Dictionary (DeLuxe 3d Ed.) p. 1865; Webster's New International Dictionary (2d Ed.) p. 2968. This is apparently the first case in the jurisprudence of this state in which a contention has been made as to the meaning of the word "year" in the Tenure Law. Our sister states having tenure laws similar to ours, however, have found that the word means 12 months. For instance, in Illinois, where the Tenure Law contains the provision that "Whatever any teacher shall have been employed in any district as a full time teacher for a probationary period of two consecutive years, * * * such teacher shall enter upon contractual continued service unless given written notice of dismissal * * *", the word "years" was held to mean years of 12 months. Anderson v. Board of Education of School Dist. No. 91 et al., 390 Ill. 412, 61 N.E.2d 562; see also Wilson v. Board of Education of School Dist. No. 126 et al., 394 Ill. 197, 68 N.E.2d 257; Carroll v. State Board of Education, 152 A. 339, 8 N.J.Misc. 859. We find nothing in our statute to indicate that the Legislature intended for the word "year" to have any meaning other than its ordinary one.

Relator contends that he became a permanent employee of the East Baton Rouge Parish School Board at the end of the scholastic year 1944-1945, and cites in support of this contention the case of Andrews v. Union Parish School Board, 191 La. 90, 184 So. 552.

This case, in our opinion, does not support his contention, for the meaning of the word "year" in the Tenure Act was not at issue in that case, and the case is authority simply for the proposition that under the Tenure Act neither a probationary nor a permanent teacher can be discharged without cause. It is true that the court there stated that, the relatrix therein having taught in the public schools of Union Parish for three years, her tenure ended on May 20, 1937, which was the end of the third scholastic year. However, in that case relatrix acquired tenure, not because she had taught three scholastic years, but because her dismissal by the school board, being improper under the act, failed to operate to prevent her from becoming a permanent teacher.

Respondents argue that the minutes of the school board's meeting of June 7, 1945, naming the teachers for the 1945-1946 school session and omitting the name of Professor Piper as an employee at the Mc-Kinley High School, constituted a dismissal of relator by negative action, and that the adoption of a formal resolution by the board dismissing and discharging him was unnecessary. This statement from the minutes that the superintendent of schools informed the board that relator was not recommended for reappointment and permanent tenure, the omission of the name of Professor Piper from the list of teachers, and the written notification to relator on

June 21 may or may not have constituted a valid discharge. Be that as it may, the minutes of the regular meeting of the school board on September 6 show conclusively that relator was dismissed and discharged as principal of the McKinley High School by formal resolution adopted by the school board, and that the school board acted affirmatively upon the written recommendation made to it by the superintendent, which was accompanied by valid written reasons and causes for the dismissal.

Further in compliance with the act, on September 7 Professor Piper was notified by letter signed by both the president of the board and its secretary that he had been discharged and dismissed, and a copy of the resolution of September 6 was enclosed with this letter. He had previously been informed repeatedly, of course, both in writing and by the superintendent verbally that he was not going to be recommended for tenure and would be discharged at the end of his probationary term.

The third paragraph of Section 48 of Act 100 of 1922, as amended, provides that any teacher found unsatisfactory by the parish school board at the expiration of his probationary term shall be notified by the board in writing that he has been discharged. This provision of the act which permits the school board to discharge a probationary teacher for cause at the expiration of the probationary term by complying with the Tenure Act was intended

to give the board an opportunity to review the teacher's record for the whole probationary period and to ascertain the teacher's competency, attention to duties, honesty, and other qualifications as a teacher. We are of the opinion that, under this provision, the school board should determine whether a teacher is satisfactory, and the teacher should be notified, if that determination is unfavorable to him and he is to be discharged, within a reasonable time after the expiration of the probationary period.

Inasmuch as relator's probationary term in the instant case expired on August 20, 1945, the resolution discharging him, adopted by the board at its next regular meeting on September 6 and the notification to him by letter of September 7 were within a reasonable time after the expiration of relator's probationary period, under the facts and circumstances of this particular case.

It is true that the act provides that in the absence of written notification a probationary teacher shall automatically become a regular and permanent teacher, and with this provision in mind the school board in such cases should act, as stated hereinabove, promptly, and certainly within a reasonable time after the expiration of the probationary term, if the teacher is not to acquire the status of a permanent teacher.

Counsel for relator has given no reason why the written reasons advanced by the school board for the discharge of the relator are not valid ones, and has made no argument that the reasons given for such discharge are not supported by the evidence. The reasons for dismissal of a teacher are largely in the sound discretion of the school board, and, unless it is clearly shown that it has abused that discretion, the courts will not interfere. See Kennington et al. v. Red River Parish School Board, La.App., 200 So. 514. In our opinion the reasons given in the instant case are valid ones, and they are sustained by the evidence; therefore, the relator has not shown that the school board abused its discretion.

Counsel for respondents reiterate a contention, which they made in a motion to dismiss this appeal, that the question of reinstatement is now a moot one inasmuch as the relator stated that he was not teaching and did "not intend to teach again in the public schools or state educational institutions of Louisiana" in an application signed by him, addressed to the Board of Trustees, Teachers' Retirement System, which was received by that board during the pendency of the appeal in this court. In order to determine whether relator is entitled to any relief for which he prayed it has been necessary for us to consider the merits of his argument that he was not lawfully discharged, and our conclusion as

to this argument disposes of all contentions regarding his reinstatement.

For the reasons assigned, the judgment appealed from is affirmed at relator's costs.

O'NIELL, C. J., and HAMITER, J., taking no part.