STOKER, Judge.
The plaintiff, Lamar Marcotte, Jr., was employed as a teacher and principal for 22 *539 years by the Avoyelles Parish School Board. In April of 1985 Mr. Marcotte was dismissed from his position as principal of Plaucheville High School after having been found guilty by the School Board of willful neglect of duty by mismanagement of public school funds. Mr. Marcotte filed a petition for review of the School Board’s actions and sued the School Board for damages resulting from his wrongful termination. The plaintiff alleged that the School Board failed to comply with the provisions of LSA-R.S. 17:441, et seq., in particular, Section 443 which governs the dismissal of tenured teachers. Additionally, plaintiff sought damages to his name and reputation caused by the School Board’s actions.
The trial court, after review of the proceedings conducted by the School Board and after affording a full hearing to the plaintiff, affirmed the actions of the Avoyelles Parish School Board and dismissed the plaintiff’s demand for damages. The plaintiff now seeks review by this court of appeal. As the court stated in Phillips v. Plaquemines Parish School Board, 465 So.2d 53, 55 (La.App. 4th Cir.1985), writ denied, 467 So.2d 540 (La.l985):
“The standard of judicial review of a school board’s tenure action is whether it is in accordance with the formalities of the Louisiana Teachers Tenure Act, LSA-R.S. 17:441-445, and supported by substantial evidence. Howell v. Winn Parish School Board, 332 So.2d 822 (La. 1976); Lowing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959). In such cases, the reasons for dismissal are largely in the sound discretion of the school board whose judgment will not be disturbed in the absence of a clear showing that the board has abused its discretion. State v. East Baton Rouge Parish School Board, 213 La. 885, 35 So.2d 804 (1948).”
After careful review of the record before us, we conclude that the School Board’s actions were conducted in accordance with LSA-R.S. 17:441-445 and were supported by substantial evidence. We find no abuse of discretion on the part of the School Board in dismissing Mr. Mar-cotte and accordingly affirm the judgment of the trial court. We have attached hereto the excellent and extensive reasons for judgment of the trial court and adopt them herein as our own.
For the reasons expressed by the trial court and for the reasons stated herein-above, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
ATTACHMENT
SUIT NO. 85-7555B
12TH JUDICIAL DISTRICT COURT PARISH OF AVOYELLES STATE OF LOUISIANA
REASONS FOR JUDGMENT
This action involves the application and interpretation of certain portions of the Louisiana Teacher Tenure Law and particularly Louisiana Revised Statutes 17:443 which provides in pertinent part as follows:
“A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, * * and then only if found guilty after a hearing by the school board of the parish * * *, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before *540 the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing.”
The plaintiff, Lamar Marcotte, Jr. was appointed principal of Plaucheville High School by the Avoyelles Parish School Board (hereinafter referred to as “the board”) on June 14, 1982. At a special meeting held on April 4, 1985, the board voted unanimously to dismiss him from that position, finding him guilty of willful neglect of duty by mismanagement of public school funds between July 1983 and February 28, 1985. There were no charges of dishonesty and no evidence of any kind suggesting that the plaintiff received any personal benefit from any of the conduct giving rise to the charges.
This action was filed by Marcotte against the board seeking to reverse his dismissal. Paragraph B of R.S. 17:443 provides in part that:
“If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.”
In addition to seeking reinstatement and back pay under the above statute, plaintiff additionally seeks recovery for alleged damages to his name, reputation, honor and integrity, together with loss of wages and attorney’s fees.
The plaintiffs petition sets forth numerous grounds for reversal of the action of the board, the principal ones being that the notice given him of the April 4, 1985 meeting did not meet the requirements of the statute; that he was not guilty of mismanagement of funds; and that he was dismissed because of the personal bias of Dickie Mayeux and not because of mismanagement of funds as stated in the notice. Dickie Mayeux is the board member whose district includes Plaucheville High School.
Mayeux is the last name of three persons who are mentioned herein. They are Dick-ie Mayeux, the school board member mentioned above; Ronald Mayeux, the Avo-yelles Parish Superintendent of Schools; and Coral Mayeux, the Finance Director for the Avoyelles Parish School Board. In the interest of clarity, they are referred to hereinafter as Board Member Mayeux, Superintendent Mayeux, and Finance Director Mayeaux. It is also pointed out that they are not related to each other.
What is the scope and nature of this court's review of the action of the school board? In Howell v. Winn Parish School Board 332 So.2d 822 (1976) the Supreme Court of Louisiana discussed that issue as follows:
“As previously noted, an aggrieved employee may ‘petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the courts shall have jurisdiction to affirm or reverse the action of the school board in the matter’ (emphasis added) La.R.S. 17:443B. While this clause by its terms provides for review by the courts and not a trial de novo, see Campo v. East Baton Rouge School Board, 231 So.2d 67, 71 (La.App. 1st Cir.1970) and Granderson v. Orleans Parish School Board, 216 So.2d 643, 646 (La.App. 4th Cir.1969), the requirement of a full hearing indicates that the legislature intended the courts to exercise a broad scope of judicial review, particularly at the district court level. See Work of the Louisiana Appellate Courts for the 1972-73 Term, 34 La.L.Rev. 197, 306 (1974). Thus in Lewing v. De Soto Parish School Board, 238 La. 43, 113 So.2d 462 (1959), this Court noted that under the provisions requiring a full hearing at the district court level, a discharged employee of a school board could present additional evidence to that court.”
Because the basis for plaintiff’s discharge was the alleged mismanagement of school funds, it is necessary to examine the rules and regulations governing school accounting. The Avoyelles Parish School Board adopted the suggested guide of the Legislative Auditor of the State of Louisiana dated January, 1983 entitled “Accounting, Auditing and Financial Reporting for Louisiana School Activity Funds”. The *541 portions of those regulations which are pertinent to this case are the following:
The parish or city school board, as the governing authority of the school system, is the sole legal entity responsible for controlling and administering the funds which enter the system.
* * * * * *
The school principal is responsible for establishing policies, within the guidance and authority granted by the parish school board related to school activity funds, and is responsible for requiring adherance to those policies.
* * * * * *
Internal school accounting should utilize two funds:
General Fund The general fund is used to account for all revenues and expenditures which tend to benefit the general school population. Revenues and expenditures in the general fund are not restricted to any specific group or activity.
Restricted Fund The restricted fund is used to account for monies that are normally restricted in their use to a specific segment of the school population and are not intended to benefit the general school population. They are restricted by activity for their disbursements. The restricted fund, is subdivided into restricted accounts which must maintain their own identity.
* * * * * *
The general fund should never expend more funds than are available from current year resources and any unexpended balances from prior years. The various clubs and activities included in the restricted fund should not be allowed to have deficit balances.
* * * * * *
All expenditures must be approved by the school principal or his designee. Expenditures from restricted funds must be approved by the activity sponsor. The expenditure of funds should only be approved when there are sufficient funds available.
******
Individual schools are not permitted to borrow or lend money for any reason or purpose. Funds may not be borrowed or transferred from a restricted account to another fund or restricted account without the permission of the club or activity group that raised the funds and the school principal. The approvals related to such transfers must be retained for audit.
* * * * * *
All school related activities should have their financial transactions recorded currently in the school records. The receipts and disbursements of some of these activities are considered restricted. As such, the expenditure of these funds are restricted to the wishes of the governing group, if approved by the sponsor and the school principal. The expenditure of the restricted funds should be allowed only to the extent funds of the group are available. Deficits should not be allowed.
Although not necessarily required by the above regulations, the common practice in the Avoyelles Parish schools, including Plaucheville High School, is to have all funds in one checking account with separate records kept of each fund. It was the alleged mismanagement of several funds in one checking account at Plaucheville High School which led to the dismissal of the plaintiff by the board.
The principal witness in support of the board's charge of mismanagement of funds, both at the board hearing of April 4, 1985 and at the trial, was Finance Director Mayeaux. He testified that the financial problems at Plaucheville High School started in July, 1983. A review of the school’s financial records as of December 31, 1983 prompted Finance Director Mayeaux to write the plaintiff on February 2, 1984. (Exhibit D-2) That letter provided in part as follows:
"Dear Mr. Marcotte:
We have reviewed your school's cash account balances (General, Clubs, etc.) as of December 31, 1983. The following accounts have deficit balances and need immediate attention:
* General Fund 3,718.01
*542 Athletic 38.08
Beta 132.10
Courtesy 2.38
Library 574.28
Drama 62.22
Please schedule an appointment for you and your secretary during the week of February 6-10.” (Underlining as shown on Exhibit D-2)
Although the general fund and the five restricted funds had deficit balances, there was still money in the account because the other fourteen restricted funds had credit balances. This meant that checks on the account were being honored in spite of the deficits in six accounts.
, Finance Director Mayeaux testified that he met with plaintiff and plaintiffs secretary, Joyce Gremillion, and instructed them as to what was necessary in order to correct these deficiencies. He also testified that he offered to help in making the necessary corrections. He said that at the request of the then board member, the board reimbursed certain expenditures which had been made from the account thereby improving the deficit situation. It was noted that although board approval is required before incurring an obligation to be paid by the board, (as distinguished from payment from school funds) on occasion the board would reimburse a school if it was an expense which would probably have been approved if it had been requested. Finance Director Mayeaux testified that for several months after February, 1984 there were short periods of slight improvement. He said that when he reviewed the accounts in October, 1984, although there were still some deficit accounts, the situation had improved compared to the preceding February and it appeared that the problem might clear up. However, in February of 1985, the account was overdrawn and Mr. Mar-cotte was notified by the bank that the account had insufficient funds to honor the checks he had issued. At that time, the checking account was overdrawn in the amount of $42.89; the restricted accounts were due $6,621.59; there were restricted account deficits of $2,668.97; and there was a general fund deficit of $3,937.70.
Upon learning of this, Superintendent Mayeux recommended a hearing to consider charges for the dismissal of plaintiff. He wrote a letter to the plaintiff dated March 5, 1985 advising him that a hearing would be held on April 4, 1985 to consider the following charges:
“Mismanagement of public school funds for the period of July, 1983 through February 28, 1985. On February 28, 1985, the Plaucheville High School checking account had a deficit balance of $42.89 and a savings account of $62.81. The funds recap (attached) shows that $6,621.59 was due club accounts, yet some clubs had deficits totaling $2,663.97. The general fund had a deficit of $3,937.70.”
The letter further advised that Finance Director Mayeaux would be witness to the charges. The said letter is a part of the record as Joint Exhibit 1.
The hearing was held as scheduled on April 4, 1985. The plaintiff was present and represented by his attorney. After the presentation of evidence by both the board and the plaintiff, and following oral argument, the board went into executive session to deliberate. Thereafter, it reconvened in public session and voted unanimously: (1) that plaintiff was guilty of mismanagement of funds; (2) that plaintiff was guilty of willful neglect of duty; and (3) that plaintiff was dismissed as principal of Plauche-ville High School.
The vote on the charge of incompetence is not clear. The minutes recite:
“All Board Members were not in favor that Mr. Marcotte was guilty of incompetence.”
There is no way of determining from the minutes, or from the transcript of the meeting, whether this means that each board member voted not guilty on the charge of incompetence or whether it means that the vote on that charge was not unanimous. Since a finding of willful neglect of duty, if properly charged and supported by substantial evidence, will support the dismissal, the uncertainty on the charge of incompetence is not crucial. *543 Nevertheless, the court will assume that the plaintiff was found not guilty of incompetence by unanimous vote.
Plaintiff alleges that the notice of the hearing did not comply with the statute. Paragraphs 18 and 19 of the petition recite:
“18.
That said letter did not comply with provisions of La.R.S. 17:443 and did not constitute ‘written and signed charges of willful neglect of duty or incompetency.’.
19.
That said letter dated March 7, 1985, did not ‘include a complete and detailed list of the specific reasons for such charges ... (including) date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at such hearing, and whether or not any such charges have previously been brought against the teacher’.”
The purpose of the notice requirement is to permit a teacher to prepare his defense to the charges. He would be unable to properly defend himself if he did not know the basis for the charges. The letter notice of March 5, 1985 (Exhibit J-l) and particularly the attached “Fund Recap” details the basis of the charges and is not vague or indefinite. The record does not indicate that any evidence was presented other than in support of the written charges. There is no indication that the plaintiff wished a delay in the hearing or to continue the hearing to a later date in order to present further evidence in his defense. The court holds that the letter of March 5, 1985 adequately describes and details the charges to be taken up at the hearing.
As noted in Paragraph 19 of plaintiff’s petition recited above, the statute requires that the notice state:
“ ‘whether or not any such charges previously have been brought against the teacher’.”
Superintendent Mayeux’s letter of March 5, 1985 fails to mention whether or not any charges had previously been brought against the plaintiff. Does this failure void the proceedings? That identical issue was addressed in the recent case of Cunningham v. Franklin Parish School Board 457 So.2d 184 (1984). The following language from that case discusses that issue:
“The requirement that the statement of charges contain certain information is designed to insure that the teacher is afforded due process in the proceedings against her. The inclusion of this information enables the teacher to know exactly what alleged facts form the basis of the proceedings against her in order that she can prepare her defense accordingly. See Johns v. Jefferson Davis Parish School Board, 154 So.2d 581 (La.App. 3rd Cir.1963). If the school board intends to present evidence that previous charges have been filed against the teacher and this information is not relayed to the teacher, she would be at a disadvantage in preparing her defense. If, however, the school board does not intend to present such evidence, the teacher is not prejudiced by the failure to include an indication as to whether previous charges have been filed. We conclude that if the teacher is otherwise afforded due process, the mere failure of the statement of charges to include an indication of whether previous charges have been filed does not render the school board’s decision to terminate a teacher invalid in the absence of prejudice to the teacher.
We find no due process violation. All of plaintiff’s constitutional rights were fully protected. See Jennings v. Caddo Parish School Board, 276 So.2d 386 (La. App. 2d Cir.1973). She was advised in writing more than 20 days before the hearing of the specific charges against her. She was represented by counsel of her choosing at a public hearing she requested. She was allowed to cross-examine the witnesses against her and present witnesses and evidence in her own behalf and she exercised her right to judicial review. Furthermore, the school board stipulated at the commencement of the hearing that no evidence would be presented of any wrongdoing on plain *544 tiff’s part which was not included in the statement of charges and no such evidence was presented. There was no attempt by the board to establish there had been any prior charges filed against the plaintiff and the record contains no indication there had even been any prior charges filed. The proceedings against plaintiff were fundamentally fair and the district judge erred in ruling to the contrary.
Since no evidence of any prior charges or acts of wrongdoing was admitted, plaintiff was not prejudiced by the deficiency in the statement of charges. The school board reached its decision solely on the evidence presented at the open hearing in support of specific charges contained in the written notice given the plaintiff. See Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La. App. 3d Cir.1965). See also Simon v. Jefferson Davis Parish School Board, 289 So.2d 511 (La.App. 3rd Cir.1974); Johns v. Jefferson Davis Parish School Board, supra.” (underlining added)
In the present case, there had never before been any charges against the plaintiff. He knew that; Superintendent Mayeux knew it; and the board knew it. The failure to state that no charges had previously been brought was clearly harmless to the plaintiff and this failure does not constitute grounds for reversing the board’s action.
It should be pointed out that plaintiff presented evidence of his having conflicts with some of the faculty and staff at the school and that this led to difficulties between plaintiff and Board Member May-eux. However, there had never been any charges in connection with these problems and they were made a part of the proceedings only because of plaintiff’s allegations and because of plaintiff presenting evidence on those issues. All of the evidence presented by the board related to the charges of financial mismanagement.
Plaintiff alleges that his dismissal was “politically motivated”; that Board Member Mayeux was unhappy with plaintiff because of conflicts with personnel who operated the food processing plant; and that Mayeux wanted plaintiff dismissed for reasons unrelated to finances. The evidence does in fact reveal, and it is not disputed, that from about June to October of 1984, there were problems between plaintiff and Board Member Mayeux about the way certain matters were being handled at the school. It is clear that Mayeux was unhappy with plaintiff’s performance as principal and that he wanted plaintiff to accept another position with the school board so that someone else would become the principal at Plaucheville High School. He had discussed these conflicts with plaintiff and he testified at the trial that he had numerous complaints from his constituents and was trying to act in the best interest of the school. However, no charges were ever brought in connection with any of those matters.
Following a staff review of the school in October, 1984, the problem between plaintiff and Board Member Mayeux had apparently been worked out. Plaintiff even testified that between October, 1984 and February, 1985 everything seemed to be going well between he and Board Member May-eux. The record is quite clear that the financial mismanagement charge was the result of the findings of Finance Director Mayeaux and there is nothing to suggest that Board Member Mayeux prompted those charges.
The issue then is whether there was substantial evidence of the financial mismanagement charge since that was the only basis on which the board could act. If there was substantial evidence to support that charge, the board’s action cannot be reversed on the basis of plaintiff’s conflicts with Board Member Mayeux. Plaintiff was given the opportunity to air all his grievances at the trial and that is what he did.
The court has reviewed all of the testimony presented at the April 4, 1985 hearing (the transcript of which is made a part of the record as Exhibit J-3) together with various school board records which were supplied to plaintiff’s counsel in connection with the hearing. Certain of the school records were discussed at the trial, were *545 offered in evidence and were given exhibit numbers. Several file folders of records were offered in evidence because they were produced at the school board hearing. Most of them are records of expenditures by Plaucheville High School during the period in question and were not specifically discussed either at the school board hearing or at the trial.
Unquestionably, plaintiff mismanaged the school funds. The only issue is whether or not the evidence of mismanagement constitutes substantial evidence of willful neglect of duty. This court holds that it does. The history of the problem from July, 1983 to February, 1985 and particularly after February, 1984 indicates plaintiffs unwillingness to abide by the board’s financial rules. The evidence shows that Plaucheville High School had debts when plaintiff was appointed principal and also that he made efforts to raise funds. But the management of the funds was woefully deficient. There was notice from the Finance Director to plaintiff in February, 1984 informing of the need for immediate attention to particular accounts. There was a meeting in February, 1984 between plaintiff and the Finance Director in which the accounting procedures were explained and plaintiff was offered help to straighten out the account. Finance Director May-eaux testified that he did in fact help in securing reimbursement from the board for certain expenditures which had been made by plaintiff.
Although plaintiff is not an accountant, there was no evidence that he failed to understand what his duties were. He disputed that there were in fact deficit accounts in spite of all records being readily available and explained to him. By February of 1985, the plaintiff had not only failed to maintain the restricted accounts in balance, but he failed to maintain a sufficient cash balance in the general fund to make up the deficits.
Other than overdrawing the entire checking account, probably plaintiffs biggest error was in purchasing items without first securing board approval. Finance Director Mayeaux explained that if a principal makes a purchase without first securing approval of the board, he is doing so at his own risk, so to speak, i.e., there is no assurance that the school’s general fund will be reimbursed by the board. Apparently plaintiff’s usual procedure was to purchase first and then ask for reimbursement later although he knew that this was not the accepted procedure.
In addition to plaintiff’s method of handling purchases, Finance Director Mayeaux testified as to what purchases were made. He reviewed the purchases for Plaucheville High School during the period in question and noted that there were many items which he considered were not necessary. He prepared a list of expenditures made by plaintiff during the period in question which he considered were “not necessarily needed”. Those expenditures totalled $7,896.38. He said that these items might be nice or convenient for a school to have but they clearly should not have been purchased when the general fund and most of the restricted funds were in deficit situations. No effort was made by plaintiff to show that these items were necessary.
Plaintiff’s evidence brought out that other schools had deficits in restricted accounts. He called as his witnesses Mr. Clayton Bullard, Principal of Lafargue High School and Mr. Kirk Guidry, Principal of Simmesport High School. Both testified that if there is a restricted account deficit, they are required to correct it. Additionally, that if there was a restricted account deficit, there was always a sufficient amount in the general fund to cover such a deficit. On cross-examination, both principals expressed their clear understanding of the purchase order system by which a principal secures board authority before making a purchase. Presumably, these principals were called as witnesses by plaintiff to show that plaintiff’s procedures were no different from other principals. However, their testimony showed quite the contrary.
Finance Director Mayeaux was cross-examined extensively in an effort to show that other principals handled their finances the same way plaintiff did but plaintiff was the only one charged with financial mismanagement. It was brought out that the other principals would sometimes permit *546 deficits in restricted accounts and when this was observed, they were instructed to immediately take care of the problem. Even in those cases, it was brought out that as testified to earlier by Principals Bullard and Guidry, there was always a sufficient general fund balance to cover restricted account deficits. He testified that in his fourteen years as Finance Director, this was the first time he had observed a school overdraw its account.
It would serve no purpose to detail the several hours of testimony relating to school accounting procedures. Suffice it to say that all phases were covered in detail; all board records were made available for plaintiffs examination; and all pertinent facts were presented.
Plaintiff alleges that he should have been warned that he would be dismissed unless the deficits were corrected. Perhaps other superintendents or other school boards would have handled the dismissal differently. However, there is no requirement in the statute that there be such a warning and this court was unable to find any jurisprudence which requires such a warning. Perhaps a threat of dismissal would have led to a correction of the situation. But the fact remains that the mismanagement had already occurred and apparently the board felt that plaintiff had been given adequate opportunity to make these corrections.
It is imperative to note that the court is not permitted to substitute its judgment in reviewing the action of the board. The rigidity or leniency of the rules which a school board may impose on its principals may certainly vary from one board to another. It is not the court’s duty to impose its own idea of hów rigid or lenient a board should be so long as its rules are reasonable and enforced fairly. Whether or not I, as an individual, would have voted to dismiss the plaintiff had I been a member of the board, is immaterial. The basis of the court’s review has been well established for many years and was succintly set forth by the Supreme Court in the Howell case, supra, as follows:
“Despite this provision for a full hearing before the district court, the standard of judicial review of a school board’s action is still whether there is a rational basis for the board’s determination supported by substantial evidence insofar as factually required. In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board’s bona fide exercise of discretion. Lewing v. De Soto Parish School Board, supra; State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1944); Simon v. Jefferson Davis Parish School Board, 289 So.2d 511 (La.App. 3d Cir.), writ denied, 293 So.2d 178 (La.1974); Jennings v. Caddo Parish School Board, 276 So.2d 386 (La.App. 2d Cir.1973).” (332 So.2d 822 at 824-825) (underlining added)
Based on the evidence presented, the provisions of R.S. 17:443, and the jurisprudence interpreting that law, the action of the Avoyelles Parish School Board taken in special session on April 4, 1985 dismissing plaintiff as principal of Plaucheville High School is affirmed and his demands for damages are dismissed at his cost.
Formal judgment will be signed accordingly.
Marksville, Louisiana this 25 day of April, 1986.
/&/ Harold J. Brouillette JUDGE, DIVISION B