## INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS ON BEHALF OF LIONEL ROBERTS, JR., Plaintiff

### v.

## GOVERNMENT OF THE VIRGIN ISLANDS, LABOR NEGOTIATOR ALDA MONSANTO, AND VIRGIN ISLANDS FIRE SERVICES, Defendants

Civil No. 803/88

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 4, 1991

LEONARD BERNARD FRANCIS, JR., ESQ., St. Thomas, V.I., *for plaintiff*

DENISE REOVAN, ESQ., Counsel to Chief Negotiator (Office of Collective Bargaining), St. Thomas, V.I., *for defendants*

SWAN, *Judge*

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's petition for a Writ of Review, seeking to have the Court review an arbitrator's decision. The defendant

has filed a Motion to Dismiss the petition. The issue presented is whether the arbitrator erred in finding two of plaintiff's co-workers eligible to sit a promotional examination 365 days after their last promotion. For the reasons that follow, plaintiff's petition for a Writ of Review will be denied.

## DISCUSSION

The controversy surrounds a provision in the parties' collective bargaining agreement which provides that "after a promotion, employees must wait *one year* before becoming eligible to take the exam for the next higher rank." The controversy focuses on three persons who are employees of the Virgin Islands Fire Service ("Fire Service"); namely Lionel Roberts, Jr., Lubin Scarbriel and Benjamin Ubiles. Lionel Roberts, Jr. ("Roberts") was promoted to the rank of sergeant on June 25, 1984. Two other employees, Lubin Scarbriel and Benjamin Ubiles ("Scarbriel" and "Ubiles"), were likewise promoted to sergeant on March 4, 1985. On March 3, 1986 Roberts, Scarbriel and Ubiles successfully passed the promotional examination for the rank of lieutenant.

The Director of the Fire Service ("Director") asserts that the examination was administered exactly 365 days after Scarbriel and Ubiles were promoted to sergeant, thereby fulfilling the one year requirement. According to the Director, both Scarbriel and Ubiles, became eligible to sit the promotional examination on March 3, 1986.

Petitioner, Lionel Roberts, Jr., challenges Scarbriel's and Ubiles' eligibility to take the lieutenant examination on the ground that although March 3, 1986 was the 365th day after their last promotions, the period of a year was not fully completed until midnight of March 3, 1986. Roberts further asserts that the gravamen of the two men's eligibility lies in the fact that they took the exam during daytime hours on March 3, 1986 rather than after midnight when March 3, 1986 had expired. Therefore, Roberts says that both Scarbriel's and Ubiles' names must be stricken from the promotional list, which would elevate his name to the third position on the Lieutenants' Promotional List. Once he achieves the third position on the list, Roberts would automatically move into an available lieutenant slot and likewise be promoted to the rank of lieutenant.[1]

---

[1] It is unclear from the record how the striking of Scarbriel and Ubiles would propel Roberts into the third position.

The arbitrator denied Roberts' grievance on several grounds including Roberts' failure to advance any persuasive argument as to why the two men were ineligible on the 365th day. The record is equally silent with respect to what time of day on March 4, 1985 both men were promoted to sergeants. Accordingly, the arbitrator concluded that both Scarbriel and Ubiles met the prerequisite for sitting the promotional examination.

The arbitrator noted that the Director of Personnel has the authority to declare persons eligible or ineligible to take promotional examinations "so long as that determination does not violate the language of the Labor agreement." 3 V.I.C. 523. He likewise found both men eligible to sit the Lieutenant's Promotional Examination. The arbitrator also found that the Director of Personnel's decision did not conflict with nor is it inconsistent with the language of the labor agreement.

Perhaps because of the straightforward nature of the issue, there is a paucity of case law on it. Nevertheless, in the absence of any clarifying language to the contrary, the meaning of the phrase "one year" means one calendar year of 365 days. Furthermore, the word "year" in law means 365 calendar days. Ex Parte Johnson, 87 P.2d 107, 109, 53 Ariz. 161 (1939); Erwin v. Benton, 87 S.W. 291, 294, 120 Ky. 536 (1905). Similarly, the word "year" in its ordinary signification means a period of 365 days or 12 months. State ex rel Piper v. East Baton Rouge Parish School Board, 35 So.2d 804, 213 La. 885 (1948). Lastly, the word "year" means a calendar year of twelve months. Coburn v. Vernon Parish School Board, 364 So.2d 231 (La. App. 1978).

■ If the parties to the agreement had intended the phrase "one year" to mean something other than its ordinary meaning of 365 days, they certainly would have expressed such an intent in the agreement in clear and unambiguous language. Instead, the language of the labor agreement is silent as to what constitutes a "year." Nonetheless, one of the standards for interpreting contracts is codified in the Restatement of Law of Contracts which provides:

> "The ordinary meaning of language throughout the country is given to words unless circumstances show that a different meaning is applicable." Restatement (First) of Contract Section 235(a).

126

The Court finds, therefore, that the parties to the agreement intended for the word "one year" to be given its ordinary meaning, which is 365 days.

There is also another consideration which compels the Court not to disturb the arbitrator's ruling. There are strong federal and national public policies favoring arbitration as an alternative means of resolving disputes. Butterkrust Bakeries v. Bakery Confectionery and Tobacco Workers International Union, AFL–CIO, Local No. 361, 726 F.2d 698 (11th Cir. 1984); Graphic Communication Union, Chicago Paper Handlers' and Electrotypes' Local No. 2 v. Chicago Tribune Company, 779 F.2d 13 (7th Cir. 1985); Coastal (Bermuda) Ltd. v. E.W. Saybolt and Company, Inc., 761 F.2d 198 (5th Cir. 1985). Therefore, and not surprisingly, the scope of judicial review of an arbitrator's decision is extremely narrow, very limited and necessarily quite restricted. Delta Air Lines, Inc. v. Air Line Pilots Association International, 861 F.2d 665, rehearing denied 867 F.2d 1431 (11th Cir. 1988); Sunshine Mine Company v. United Steel Workers of American, AFL–CIO, CLC, 823 F.2d 1289 (9th Cir. 1987).

■ Additionally, it is well settled that the scope of review of an arbitration award is limited to a determination of whether the arbitrator has exceeded his authority, whether he has failed to perform his contractual duty or whether the arbitrator's award is arbitrary and capricious. Rissing v. Department of Public Safety, Government of the Virgin Islands, 20 V.I. 426 (Terr. Ct. St.C. 1984); Local 616, Int'l Union of Electrical, Radio & Machine Workers, AFL–CIO, v. Byrd Plastics, Inc., 428 F.2d 23 (3rd Cir. 1970); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3rd Cir. 1969).

Moreover, it is not within the Court's jurisdiction to weigh the merits of a grievance, but it must uphold an arbitrator's decision on factual determinations as long as the decision is based upon relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Alberto M. Donastorg, Sr. v. Government Employees Service Commission, 6 V.I. 368, 285 F. Supp. 111 (1968); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 694 (1960).

Upon the Court's review of the record, it found no indication that the arbitrator was arbitrary and capricious, or exceeded his authority, or failed to perform his contractual obligation. The arbitrator made his determination of the issue on the basis of facts and the provisions in the pertinent labor agreement.

The matter of interpretation of a collective bargaining agreement in resolving or deciding a grievance is a matter for the arbitrator. The Court found sufficient evidence in the record to support the arbitrator's decision, and even if this Court disagreed with his interpretation of the labor agreement, it would not be authorized to overrule his decision based on the record before the Court. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593 (1960).

## CONCLUSION

■ The Court, therefore, concludes that in the absence of any clarifying language assigning a contrary meaning, the term "one year" in a labor agreement must be given its ordinary and general meaning which is 365 days. Additionally, the Court cannot find any evidence of the arbitrator having exceeded his authority, nor of the arbitrator's decision being arbitrary and capricious, nor of the arbitrator's decision being clearly erroneous. Therefore, plaintiff's petition for a Writ of Review is DENIED.

## ORDER

In accordance with the memorandum opinion of even date, it is hereby

ORDERED that plaintiff's petition for a Writ of Review is hereby DENIED.